J. B. VOSBURG, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 18,029.

SYLLABUS BY THE COURT.

RAILROADS—*Constitutional Law—Equal Protection of the Law— Statute Allowing Attorney Fee Valid.* The provision of the act relating to the furnishing of cars by railway companies to shippers of freight (Gen. Stat. 1909, § 7203) which allows shippers to recover attorney fees in actions successfully prosecuted under the act does not deny the railway companies the equal protection of the laws guaranteed by the federal constitution because they are not allowed attorney fees if they are successful in such suits or because they are not allowed attorney fees in actions successfully prosecuted by them against shippers for the detention of cars contrary to the reciprocal provision of the act.

Appeal from Edwards district court. Opinion filed March 8, 1913. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott*, all of Topeka, and *William Osmond*, of Great Bend, for the appellant.

*W. E. Broadie*, of Kinsley, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Chapter 345 of the Laws of 1905, as amended by chapter 275 of the Laws of 1907 (Gen. Stat. 1909, § 7201 *et seq.*), concerns the furnishing of cars by railway companies to shippers of freight.

When cars applied for under this statute are not duly furnished, the railway company is liable to the shipper for all actual damages suffered, for a penalty of five dollars per day for each car not supplied, and for a reasonable attorney fee. Shippers who fail to use cars placed at their disposal are subject to a penalty for their detention, but are not liable for attorney fees. The plaintiff recovered a judgment against the defendant for a violation of this statute, including an attorney fee, and the defendant appeals on the ground that the provision relating to attorney fees denies it the equal protection of the law guaranteed by the federal constitution.

The question being one which involves an application of a provision of the federal constitution the decisions of the supreme court of the United States are, of course, controlling. Certain fundamental principles are generally recognized. All persons, including corporations, hold property and engage in business subject to the police power of the state. In the exercise of the police power, the state may legislate for the general peace, good order, health, safety, convenience, and welfare. Such regulations must be reasonable and fairly adapted to secure the ends in view. They must operate alike upon all persons similarly situated but classifications may be made in view of peculiar circumstances or conditions which furnish ground for difference in regulation. The supreme court of the United States has dealt with these principles in several cases involving the allowance of attorney fees.

In the case of *Gulf, Colorado & Santa Fe R'y v. Ellis*, 165 U. S. 150, it appeared that a statute of Texas gave attorney fees in cases of claims not exceeding fifty dollars in amount against railway companies, for personal services, labor, damages, overcharges on freight, and stock killed. The statute was held to be void. The court said:

"The act singles out a certain class of debtors and

punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They can not appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong.' They do not enter the courts upon equal terms. They must pay attorney's fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong. In the suits, therefore, to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection. All this is obvious from a mere inspection of the statute. . . . While good faith and a knowledge of existing conditions on the part of a legislature is to be presumed, yet to carry that presumption to the extent of always holding that there must be some undisclosed and unknown reason for subjecting certain individuals or corporations to hostile and discriminating legislation is to make the protecting clauses of the Fourteenth Amendment a mere rope of sand, in no manner restraining state actions. . . . The State may not say that all white men shall be subjected to the payment of the attorney's fees of parties successfully suing them and all black men not. It may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. That must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . . It is, of course, proper that every debtor should pay his debts, and there might be no impropriety in giving to every successful suitor attorney's fees. Such a provision would bear a reasonable relation to the delinquency of the debtor, and would certainly create no inequality of right or protection. But before a distinction can be made between debtors, and one be punished for a failure to pay his debts, while another is permitted to be-

come in like manner delinquent without any punishment, there must be some difference in the obligation to pay, some reason why the duty of payment is more imperative in the one instance than in the other.

"If it be said that this penalty is cast only upon corporations, that to them special privileges are granted, and therefore upon them special burdens may be imposed, it is a sufficient answer to say that the penalty is not imposed upon all corporations. The burden does not go with the privilege. Only railroads of all corporations are selected to bear this penalty. The rule of equality is ignored. . . . But if the classification is not based upon the idea of special privileges, can it be sustained upon the basis of the business in which the corporations to be punished are engaged? That such corporations may be classified for some purposes is unquestioned. The business in which they are engaged is of a peculiarly dangerous nature, and the legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves. And any classification for the imposition of such special duties—duties arising out of the peculiar business in which they are engaged —is a just classification, and not one within the prohibition of the Fourteenth Amendment. Thus it is frequently required that they fence their tracks, and as a penalty for a failure to fence double damages in case of loss are inflicted. *Missouri Pacific Railway v. Humes,* 115 U. S. 512. But this and all kindred cases proceed upon the theory of a special duty resting upon railroad corporations by reason of the business in which they are engaged—a duty not resting upon others; a duty which can be enforced by the legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the state, or by double damages to a party injured is immaterial. It is all done in the exercise of the police power of the state and with a view to enforce just and reasonable police regulations.

"While this action is for stock killed, the recovery of attorney's fees can not be sustained upon the theory just suggested. There is no fence law in Texas. The legislature of the state has not deemed it necessary for the protection of life or property to require railroads

to fence their tracks, and as no duty is imposed there can be no penalty for nonperformance. Indeed, the statute does not proceed upon any such theory; it is broader in its scope. Its object is to compel the payment of the several classes of debts named, and was so regarded by the supreme court of the state.

"But a mere statute to compel the payment of indebtedness does not come within the scope of police regulations. The hazardous business of railroading carries with it no special necessity for the prompt payment of debts. That is a duty resting upon all debtors, and while in certain cases there may be a peculiar obligation which may be enforced by penalties, yet nothing of that kind springs from the mere work of railroad transportation. Statutes have been sustained giving special protection to the claims of laborers and mechanics, but no such idea underlies this legislation. It does not aim to protect the laborer or the mechanic alone, for its benefits are conferred upon every individual in the state, rich or poor, high or low, who has a claim of the character described. It is not a statute for the protection of particular classes of individuals supposed to need protection, but for the punishment of certain corporations on account of their delinquency.

"Neither can it be sustained as a proper means of enforcing the payment of small debts and preventing any unnecessary litigation in respect to them, because it does not impose the penalty in all cases where the amount in controversy is within the limit named in the statute. Indeed, the statute arbitrarily singles out one class of debtors and punishes it for failure to perform certain duties—duties which are equally obligatory upon all debtors; a punishment not visited by reason of the failure to comply with any proper police regulations, or for the protection of the laboring classes, or to prevent litigation about trifling matters, or in consequence of any special corporate privileges bestowed by the state. Unless the legislature may arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency, this statute can not be sustained.

"But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the Fourteenth Amendment forbids this.' . . .

Vosburg v. Railway Co.

It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection. Tested by these principles the statute in controversy can not be sustained." (pp. 153-157, 165.)

This opinion was written by Mr. Justice Brewer. Chief Justice Fuller and Justices Gray and White dissented.

In the case of *Atchison, Topeka &c. Railroad v. Matthews,* 174 U. S. 96, the court considered the statute of Kansas which allows an attorney fee in an action against a railroad company for damages by fire caused by operation of the road. The statute was held to be valid. In the opinion, written by Mr. Justice Brewer, it was said:

"The purpose of this statute is not to compel the payment of debts, but to secure the utmost care on the part of railroad companies to prevent the escape of fire from their moving trains. This is obvious from the fact that liability for damages by fire is not cast upon such corporations in all cases, but only in those in which the fire is 'caused by the operating' of the road. It is true that no special act of precaution was required of the railroad companies, failure to do which was to be visited with this penalty, so that it is not precisely like the statutes imposing double damages for stock killed where there has been a failure to fence. (*Missouri Pac. Railway v. Humes,* 115 U. S. 512.) And yet its purpose is not different. Its monition to the railroads is not, pay your debts without suit or you will, in addition, have to pay attorney's fees; but rather, see to it that no fire escapes from your locomotives, for if it does you will be liable, not merely for the damage it causes, but also for the reasonable attorney's fees of the owner of the property injured or destroyed. It has been frequently before the supreme court of Kansas, has always been so interpreted by that court, and its

validity sustained on that ground. In *Missouri Pac. Railway v. Merrill,* 40 Kan. 404, 408, it was said: 'The objection that this legislation is special and unequal can not be sustained. The dangerous element employed and the hazards to persons and property arising from the running of trains and the operation of railroads justifies such a law; and the fact that all persons and corporations brought under its influence are subjected to the same duties and liabilities, under similar circumstances, disposes of the objections raised.'

"And in the opinion filed in the present case, 58 Kan. 447, 450, that court observed: 'Our statute is somewhat in the nature of a police regulation, designed to enforce care on the part of railroad companies to prevent the communication of fire and the destruction of property along railroad lines. It is not intended merely to impose a burden on railroad corporations that private persons are not required to bear, and the remedy offered is one the legislature has the right to give in such cases.' . . . That there is peculiar danger of fire from the running of railroad trains is obvious. The locomotives passing, as they do at great rates of speed, and often when the wind is blowing a gale, will, unless the utmost care is taken (and sometimes in spite of such care), scatter fire along the track. The danger to adjacent property is one which is especially felt in a prairie state like Kansas. . . . No other work done, or industry carried on, carries with it so much of danger from escaping fire.

"In 1887 the legislature of the state of Missouri felt constrained to pass an act making every railroad corporation responsible in damages for all property destroyed by fire communicated directly or indirectly from its engines, and giving the corporation an insurable interest in the property along its road. This statute was, after a full examination of all the authorities, held by this court a valid exercise of the legislative power. *St. Louis & San Francisco Railway v. Mathews,* 165 U. S. 1. So, when the legislature of Kansas made a classification, and included in one class all corporations engaged in this business of peculiar hazard, it did so upon a difference having a reasonable relation to the object sought to be accomplished, to wit, the securing of protection of property from damage or destruction by fire." (pp. 98, 101, 102.)

The Ellis case was distinguished on the ground that the statute of Texas was not a police regulation and that the classification there attempted was purely arbitrary. While the Ellis case involved the killing of a colt, the purpose of the statute was not to lessen the hazard to stock. If that had been true, the more stock found on a railroad track, the greater would have been the danger and the more imperative the need of protection. Yet claims under the statute were limited to fifty dollars, making it clear that no police regulation was intended. The statute was simply one to compel the payment of debts. Compelling the payment of debts is not a police regulation and no reason existed for singling out railroad companies from all other debtors and punishing them for such a delinquency.

The general principles governing the subject were restated in the following manner:

"On the other hand, it is also true that the equal protection guaranteed by the constitution forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens and liabilities which are not cast upon others similarly situated. It can not pick out one individual, or one corporation, and enact that whenever he or it is sued the judgment shall be for double damages, or subject to an attorney fee in favor of the plaintiff, when no other individual or corporation is subjected to the same rule. Neither can it make a classification of individuals or corporations which is purely arbitrary, and impose upon such class special burdens and liabilities. Even where the selection is not obviously unreasonable and arbitrary, if the discrimination is based upon matters which have no relation to the object sought to be accomplished, the same conclusion of unconstitutionality is affirmed. *Yick Wo v. Hopkins*, 118 U. S. 356, forcibly illustrates this. In that case a municipal ordinance of San Francisco, designed to prevent the Chinese from carrying on the laundry business was adjudged void. This court looked beyond the mere letter of the ordinance to the condition of things as they existed in San Francisco, and saw that under the guise of regulation an arbitrary classification was intended and accomplished. . . . It is

the essence of a classification that upon the class are cast duties and burdens different from those resting upon the general public. Thus, when the legislature imposes on railroad corporations a double liability for stock killed by passing trains it says, in effect, that if suit be brought against a railroad company for stock killed by one of its trains it must enter into the courts under conditions different from those resting on ordinary suitors. If it is beaten in the suit it must pay, not only the damage which it has done, but twice that amount. If it succeeds, it recovers nothing. On the other hand, if it should sue an individual for destruction of its live stock it could under no circumstances recover any more than the value of that stock. So that it may be said that in matter of liability, in case of litigation, it is not placed on an equality with other corporations and individuals; yet this court has unanimously said that this differentiation of liability, this inequality of right in the courts, is of no significance upon the question of constitutionality. Indeed, the very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality." (*Atchison, Topeka &c. Railroad v. Matthews*, 174 U. S. 96, 104, 106.)

Justices Harlan, Brown, Peckham and McKenna dissented. In the dissenting opinion delivered by Mr. Justice Harlan, it was said:

"Manifestly, the statute applies only to suits against railroad companies, and only to causes of action arising from fire caused by operating a railroad. It establishes against a defendant railroad company a rule of evidence as to negligence that does not apply in any other suit for damages arising from the negligence of a defendant, whether a corporate or natural person. It does more. It imposes upon the defendant railroad corporation, if unsuccessful in its defense, a burden not imposed upon any other unsuccessful defendant sued upon a like or upon a different cause of action. That burden is the payment of an attorney's fee as a part of the judgment. Even if it appears that the railway company was not guilty of any negligence whatever or that the plaintiffs were guilty of contributory negligence preventing any recovery in their favor, no

such fee nor any sum beyond ordinary costs is taxed against them. . . . I do not perceive that the judgment now rendered finds support in any adjudication by this court. The above cases proceed upon the general ground that in the exercise of its police power a state may by statute impose additional duties upon railroad corporations, with penalties for the nonperformance of such duties, and that such legislation is not, because of its special character, a denial of the equal protection of the laws. It is said to be of the essence of classification that 'upon the class are cast duties and burdens different from those resting upon the general public.' But here the state does not prescribe any additional duties upon railroad companies in respect of the destruction of property by fire arising from the operating of their roads. It simply imposes a penalty which it does not impose upon other litigants under like circumstances. It only prescribes a punishment for assuming to contest a claim of a particular kind made against it for damages. The railroad company can escape the punishment only by failing to exercise its privilege of resisting in a court of justice a demand which it deems unjust. Undoubtedly, the state may prescribe new duties for a railroad corporation and impose penalties for their nonperformance. But, under the guise of exerting its police powers, the state may not prevent access to the courts by all litigants upon equal terms. It may not, to repeat the language of the court in the Ellis case, 'arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency.' Arbitrary selection can not, we said in the same case, 'be justified by calling it classification.' There is no classification here except one that denies the equal protection of the laws. It would seem that what was said in the Ellis case was exactly in point, namely, 'as no duty is imposed there can be no penalty for nonperformance.' Instead of prescribing some penalty for the neglect by the railroad company of duties specifically enjoined upon it, the state attempts—and by the decision just rendered is enabled—to take from the company the right which we declared in the Ellis case was secured by the constitution, namely, the right to 'appeal to the courts as

other litigants, under like conditions and with like protection.'

"Some ·stress is laid upon the fact that the statute under consideration was passed by a state in which fires caused by the operating of railroads may often cause and are likely to cause widespread injury to grass, crops, houses and barns. What, in the light of the authorities, the state may constitutionally do in order to protect its people against dangers of that character I need not stop to consider. The only question here is whether, in the absence of any statutory regulation prescribing what a railroad corporation shall, or shall not do, in order to guard property against destruction by fire arising from the operating of its road, the state can deny to such a corporation, when defending a suit brought against it to recover damages on the ground of negligent destruction of property, a privilege which it accords to its adversary in the trial of the issues joined. May the state meet the railroad corporation at the doors of its courts of justice and say to it, 'If you enter here for the purpose of defending the suit brought against you it must be subject to the condition that a special attorney's fee shall be taxed against you if unsuccessful, while none shall be taxed against the plaintiff if he be unsuccessful?' Nothing has ever heretofore fallen from this court sustaining the proposition that the constitutional pledge of the ·equal protection of the laws admitted of a litigant, because of its corporate character, being denied in a court of justice privileges of a substantial kind accorded to its opponent. If there is one place under our system of government where all should be in a position to have equal and exact justice done to them, it is a court of justice—a principle which I had supposed was as old as Magna Charta.

"In my opinion the statute of Kansas denies to a litigant, upon whom no duty has been imposed by statute and whose liability for wrongs done by it depends upon general principles of law applicable to all alike, that equality of right given by the law of the land to all suitors, and consequently it should be adjudged to deny the equal protection of the laws." (pp. 107, 123.)

The next case deserving special attention is that of *Fid. Mut. Life Assn. v. Mettler,* 185 U. S. 308. In that

case it appeared that a statute of Texas allowed attorney fees in actions upon policies issued by life and health insurance companies. Fire and marine insurance companies and mutual benefit and benevolent associations were not similarly penalized. The entire argument of the court is represented by the following paragraph from the opinion delivered by Chief Justice Fuller:

"It is apparent from the various sections of the title relating to insurance, to which we have before referred, that this particular liability amounted to one of the conditions on which life and health insurance companies were permitted to do business in Texas, and the power of the state in the matter of the imposition of conditions on its own and foreign corporations, has been repeatedly recognized by this court. If, however, notwithstanding the acceptance of these conditions, the constitutionality of the particular condition were nevertheless open to question, we must decline to sustain the objection. The reasoning in *Railroad Company v. Matthews*, 174 U. S. 96, applies rather than that in *Railway Company v. Ellis*, 165 U. S. 150. The ground for placing life and health insurance companies in a different class from fire, marine and inland insurance companies is obvious, and we think that putting them in a different class from mutual benefit and relief associations doing business through lodges, and benevolent associations of the character mentioned in the Texas statutes, is not an arbitrary classification, but rests on sufficient reason. The legislature evidently intended to distinguish between life and health insurance companies engaged in business for profit (and we are not called on to refine as to the distribution of such profits), and lodges and associations of a mutual benefit or benevolent character, having in mind also the necessity of the prompt payment of the insurance money in very many cases in order to provide the means of living of which the beneficiaries had been deprived by the death of the insured." (p. 326.)

Justice Brewer concurred in the judgment. Justices Harlan and Brown dissented. In the dissenting opinion by Justice Harlan, it was pointed out that it is one

thing to impose conditions upon the doing of corporate business in a state, but an entirely different thing to subject certain corporations to arbitrary statutory penalties after they have been admitted to the state and licensed to do business there. The opinion continues as follows:

"The court says that the ground for placing life and health insurance companies in a different class from fire, marine and inland insurance companies is obvious. The only reason assigned for that statement is 'the necessity of the prompt payment of the insurance money in very many cases in order to provide the means of living of which the beneficiaries had been deprived by the death of the insured.' But the same reasons exist for prompt payment by a fire insurance company when the house which shelters the insured and his family is destroyed by fire. And yet, under the statute, a fire, marine or inland insurance company, if it resists a claim for loss, is not liable, when its defense is unsuccessful, to pay any special damages or special attorney's fee. It can defend any suit brought against it under the same conditions accorded to individual citizens or to corporate bodies generally. But a different and most arbitrary rule is prescribed for life and health insurance companies. Their good faith in refusing to pay a claim for loss, or in defending an action brought to enforce payment of such a claim, is not taken into account. If, in any case, they do not, within a specified time, pay the amount demanded of them, no matter what may be the reason for their refusal to pay, and if they do not succeed in their defense, they must pay not only the principal sum, with ordinary interest, but, in addition, twelve per cent damages on the amount of the principal, and all reasonable attorney's fees for the prosecution and collection of the loss. Thus the state, in effect, forbids a life or health insurance company to appear in a court of justice and defend a suit brought against it, except subject to the harsh condition that if the jury does not sustain the defense, the company must pay special damages and special attorney's fees that are not exacted from any other defendant, corporate or individual, who may be sued for money.

"This is such an arbitrary classification of corporations and such a discrimination against life and health insurance companies as brings the statute within the decision in the Ellis case, which has been often referred to by this court with approval." (p. 335.)

The decision in the Mettler case was followed without discussion of principles in the case of *Iowa Life Insurance Co. v. Lewis,* 187 U. S, 335.

In the case of *Farmers' &c. Ins. Co. v. Dobney,* 189 U. S. 301, the court considered a statute of Nebraska which reads as follows:

"Sec. 43.   Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages.

"Sec. 44.   This act shall apply to all policies of insurance hereafter made or written upon real property in this state, and also to the renewal, which shall hereafter be made, of all policies heretofore written in this state, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state.

"Sec. 45.   The court, upon rendering judgment against an insurance company upon any such policy of insurance shall allow the plaintiff a reasonable sum as an attorney's fee, to be taxed as part of the costs." (Cobbey's Annotated Statutes of Neb., 1911, §§ 6462-6464.)

The statute was held to be valid.

On the strength of the Mettler case and two others (*Orient Insurance Company v. Daggs,* 172 U. S. 557, and *Hancock Mutual Life Ins. Co. v. Warren,* 181 U. S. 73) it was simply announced that insurance policies are susceptible of classification, not only apart from other contracts, but from each other.   It was then held that the difference between real and personal property, and

the difference between total and partial destruction of property, are enough to warrant classification which will sustain the allowance of attorney fees, the court saying:

"It is, however, argued that no·reason could have existed for classifying losses on real estate separately from losses on other property. And by what process of reasoning, it is asked, could the legislative mind have discovered the foundation for allowing the recovery of a reasonable attorney's fee in case of a total loss of real estate insured and not permit recovery of such. fee when the property insured has been only partially destroyed? The distinction between real and personal property has in all systems of law constantly given rise to different regulations concerning such property. The differences of relation which may arise between the insurer and the insured, depending upon whether the property insured has been only partially damaged or has been totally destroyed, needs but to be suggested. In the one case, the amount of the damage affords possibilities for a reasonable difference of opinion between the parties in adjusting the payment under the policy. In the other, the amount being determined under the statute by the value fixed by both parties in the policy, the question of legal liability under the policy would be, as a general rule, the only matter to be considered in determining whether payment under the contract will be made. Besides, it is obvious that the total destruction of real estate covered by insurance necessarily concerns the homes of many of the people of the state. If in regulating and classifying insurance contracts the legislature took the foregoing considerations into view and provided for them, we can not say that in doing so it acted arbitrarily and wholly without reason." (*Farmers' &c. Ins. Co. v. Dobney,* 189 U. S. 301, 305.)

This opinion was written by then Justice (now chief justice) White. Justices Harlan, Brewer and Brown dissented, but no dissenting opinion was filed.

The "obvious distinction" between life insurance policies and fire insurance policies which in the Mettler case furnished a basis for the imposition of attorney-fee penalties in suits on life policies seems to have dis-

appeared. It is very easy to say that the distinction between real and personal property gives rise to differences in regulation, but what has become of the doctrine of the Ellis case that mere classification is not enough, and that the peculiar regulation which follows the classification must bear some natural and substantial relation to the distinction upon which the classification is based? It may be observed that "it is obvious" that the partial destruction of real estate covered by insurance concerns the homes of many people the same as total destruction. But, with due deference, it is not so obvious upon bare suggestion why matters other than value, arising in the adjustment of losses, as for example, fraud on the part of the insured, or noncompliance with some just and reasonable condition of the policy, are so unlike differences of opinion respecting value as to spell attorney fees in one case and not in the other. Indeed, so far as the grounds for this decision are concerned, it would have been precisely the same had the classification been reversed, the property being personal and the loss partial, which is to say that insurance companies may be penalized by the imposition of attorney fees practically at the will of state legislatures, notwithstanding the fourteenth amendment to the constitution of the United States.

Several state courts have been embarrassed in their efforts to conform to the Ellis case, as the case note, 17 L. R. A., n. s., 910, shows, and the question arises whether or not that decision is to be refined away in railroad and other cases as it has been in insurance cases. No decision subsequent to the Dobney case throws any clarifying light upon the subject.

Whatever the answer to the question just propounded may be, the court is of the opinion that the statute now under consideration may be sustained under both the majority and minority opinions in the Matthews case

9—89 KAN.

(174 U. S. 96). The act is clearly a police regulation. Perhaps the legislature had in mind certain car shortages which have occurred in the wheat belt of Kansas coincident with manipulations of the Chicago wheat market, discriminations between favored and disfavored shippers, and some other practices quite detrimental to the public welfare. Besides these special matters, the prompt furnishing of cars for the transportation of the products and property of the state is so essential to its prosperity that the subject falls well within the police power. In the exercise of this power specific regulations have been adopted and specific duties imposed. These duties may properly be enforced by penalties in the form of per diem forfeits and attorney fees, recoverable in suitable actions. The control of railroad companies over their cars, except in the extraordinary cases exempted from the statute, their capacity mischievously to disturb and obstruct trade, and the helplessness of shippers and others when cars are carelessly or arbitrarily withheld, all combine to place such companies in a class by themselves for the purpose of securing efficient car service, and the equal protection of the law requires no more than that all railway companies shall be penalized alike. It is true that shippers may offend somewhat by failing to make expeditious use of cars when furnished them. Whether or not they too shall be penalized, and if so to what extent, is a fit subject for legislative consideration. But the railroad companies can not complain if the legislature chooses to exempt shippers from any punishment, or chooses to prescribe some penalty suitable to the nature of their delinquency, but different from that imposed upon the companies themselves.

The result is that the statute may be upheld without going to the lengths apparently permitted by the Dobney case, and the judgment of the district court is therefore affirmed.