**AETNA CASUALTY AND SURETY COMPANY, a Corporation, Plaintiff,**

v.

**Patricia Annette (Weeks) MILLER, Eleanor Fitch, and Carl M. Hurlbert, Defendants.**

No. KC–2483.

United States District Court
D. Kansas.

Aug. 18, 1967.

Garry W. Lassman, Keller, Wilbert, Palmer & Bieber, Pittsburg, Kan., for plaintiff.

J. John Marshall, R. L. White, Nulton, Letton, White & Nettels, Pittsburg, Kan., for defendants.

## OPINION INCORPORATING FINDINGS OF FACT AND CONCLUSIONS OF LAW

THEIS, District Judge.

This case arises out of a complaint of the plaintiff, Aetna Casualty and Surety Company, under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq., against the defendants Patricia Annette (Weeks) Miller, Eleanor Fitch, and Carl M. Hurlbert, seeking a judgment of the Court holding that the provisions of a certain automobile liability insurance policy issued by it do not cover the subject matter of negligence litigation in which the present parties are parties in another lawsuit in another court.

The policy of insurance, which is the subject matter of this lawsuit, was issued on or about the 28th day of October, 1961, to one Albert Wayne Weeks, covering his automobile described as a 1958 Studebaker Champion, in the amount of $5,000.00 for property damage, and $10,000.00 liability for injuries to persons as a result of the operation of a vehicle or vehicles of the named insured. As a preliminary matter, the Court finds it has jurisdiction of the action because of diversity of citizenship of the parties and requisite jurisdictional amount.

The facts are that the defendant Patricia Annette (Weeks) Miller, hereinafter referred to as "Patricia," and Albert Wayne Weeks, hereinafter referred to as "Albert," were married on May 10, 1957, in Amarillo, Texas. At that time, and at all times pertinent to the facts in this matter, Albert was in the military service. On December 24, 1961, following some marital difficulties, and while the couple were living in Texas, Patricia left Albert and returned to her home in Pittsburg, Kansas, where her parents resided. At that time she took with her the two minor children born of the marriage and a portion of her personal belongings and necessities, apparently mostly clothing, that she was able to transport with her at that time. On January 23, 1962, Albert instituted an action of divorce against Patricia in the Circuit Court of Jackson County, Missouri, in Independence, Missouri. Thereafter, in February, 1962, Albert was transferred to Richards-Gebauer Air Force Base near Kansas City, and lived at 613 Red Road, Independence, Missouri, with his parents, his sister, and his sister's children, where he stored most of the furniture and household possessions of the parties. Between the time of separation, December 24, 1961, and June 17, 1962, Patricia on several occasions took the children to Independence so that they could see Albert and visit with him. Likewise, on several occasions Albert drove to Pittsburg, Kansas, to see his children, where he stayed at motels, such visits being for several days at a time.

On or about June 4, 1962, Patricia purchased a 1952 Buick automobile from her father and had it titled in her name only. Thereafter, on June 17, 1962, while driving this automobile, she was involved in a collision in Pittsburg, Kansas, and as a result of fatal injuries to a passenger in her car, an action for damages was brought against Patricia in April of 1963, in the State District Court of Crawford County, Kansas. The plaintiff in the State Court suit against Patricia is Eleanor Fitch, one of the defendants in this action. Another defendant in this action, Carl M. Hurlbert, the driver of the other automobile involved in the fatal accident, was also named as a defendant in the State Court suit. In the State Court action for damages, Patricia has joined Aetna Casualty and Surety Company, the plaintiff here, as a third party defendant, seeking coverage under the policy issued to Albert by the plaintiff, Aetna Casualty and Surety Company, which policy was in effect on June 17, 1962.

From the date the divorce proceedings were instituted by Albert against Patricia in the Circuit Court of Jackson County, Missouri, the outcome was delayed as a result of legal proceedings in the suit and no divorce was granted until October 11, 1962. After the date of the filing of the divorce action Patricia and Albert never maintained any permanent residence of their own together, he living, as stated, with his parents in Independence, and she living in Pittsburg, Kansas, except for the visitations aforesaid.

It is the contention of the plaintiff insurance company in this action that the provisions in its policy introduced in evidence as Plaintiff's Exhibit 1, covered only Albert, and do not and never did apply to Patricia or the vehicle she was driving at the time of her accident on June 17, 1962, for the reason, the company contends, that Patricia was not within the definition of a "named insured" within the provisions of the policy, nor operating the described automobile in the policy.

Pertinent provisions of the insurance policy to the decision in this case are as follows:

"Persons Insured.

The following are Insureds under Part I:

(a) With respect to the owned automobile,

(1) *the named Insured and any resident of the same household;*

\* \* \* \* \* \*

"Definitions.

Under Part I:

'named Insured' means the individual named in item 1 of the declarations *and also includes his spouse, if a resident of the same household;*

\* \* \* \* \* \*

'owned automobile' means a private passenger, farm or utility automobile or trailer owned by the named Insured, and includes a temporary substitute automobile; \* \* \*."
(Emphasis supplied)

Also pertinent, under the part of the policy outlining CONDITIONS, section 2 thereof, relating to "Premium" reads as follows:

"2. Premium—If the named Insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile or, with respect to Part III, a trailer, he shall inform the Company during the policy period of such change. Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the Company. The named Insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof."

Whether the provisions of the policy in question cover and insure the accident of Patricia, depends principally upon the interpretation of who are insured persons, and the specific meaning of that part of the definition of "named Insured," which includes the spouse of a policy holder, "if a resident of the same household." It therefore becomes pertinent to interpret the phrase "if a resident of the same household." The precise question of fact is whether, under any reasonable interpretation of the policy, was Patricia, at the time of the accident, a resident of the household of Albert, her husband?

At the trial of this case much of the evidence introduced before the Court consisted of conflicting testimony on each side as to whether, after the initial separation of Patricia and Albert on December 24, 1961, and prior to the divorce decree entered on October 11, 1962, the parties thereafter lived together as husband and wife. It was the testimony of the witness Albert that such events never occurred during the visitations of Patricia and Albert after their initial separation. It was very positively the testimony of Patricia that such events did occur whenever they were together. As a matter of credibility, the Court believes the testimony of Patricia more probably states the truth. However, it is the opinion of the Court that its decision

need not rest on such a fact only, but on other specific facts and for legal reasons much more general in their scope.

■ In interpreting the provisions of the policy it would be well to remember certain long-established axioms of law in this jurisdiction. The law is well laid down in Kansas, as in most other states, that a policy of insurance should be strictly construed against the insurer, and liberally in favor of the insured. See Insurance Company v. Milling Company, 69 Kan. 114, 76 P. 423. Stating the same principle in a different way, ambiguous, inconsistent, or uncertain provisions are construed against the insurer, and most favorably to the insured. See Evans v. Woodmen Accident Association, 102 Kan. 556, 171 P. 643, L.R.A.1918D, 122; Liberty Life Insurance Co. v. Guthrie, 148 Kan. 907, 84 P.2d 891; Spence v. New York Life Ins. Co., 154 Kan. 379, 118 P.2d 514, 137 A.L.R. 753; Baker v. Continental Ins. Co., 155 Kan. 26, 122 P.2d 710; Saul v. St. Paul-Mercury Indemnity Co., 173 Kan. 679, 250 P.2d 819; Lavin v. State Farm Mutual Automobile Ins. Co., 193 Kan. 22, 391 P.2d 992. Or, as stated in the case of Liberty Life Insurance Co. v. Guthrie, supra:

"The insurer prepared its own policy. It was its duty to make its meaning clear. Where it fails to do so it, and not the insured, must suffer the consequences."

Again, referring to Lavin v. State Farm Mutual Automobile Ins. Co., supra, the Kansas Supreme Court recently approved rules of construction for insurance policies, citing a Texas case, as follows:

" 'The rules of construction to be observed in construing an insurance policy are well stated * * * as follows:

'(1) An insurance policy will be construed strictly against the insurer;

(2) when the terms of an insurance contract are capable of two or more constructions and under one a recovery is allowable and under the other it is denied, the construction which permits recovery will be given the policy; (3)

forfeitures of insurance coverage is not favored; and (4) if a fair and reasonable construction of an insurance contract will permit, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it.' "

The plaintiff here, arguing for a narrow construction of the terms of the policy before the Court, indicates that it is well aware of the general rules of construction of an insurance policy where there is ambiguity or uncertainty, and the provisions may be subject to one or more interpretations. Plaintiff states in its brief:

"The plaintiff is also aware that cases bearing on the questions of law involved herein are to some extent roughly divided into cases involving policies excluding from coverage of the policies, members of the insured's household, and those extending coverage to such persons. Thus, in some cases it is to the insured's advantage to be found to be not a member of the same household, whereas, in other cases of the extension variety, it is to the insured's advantage to be found to be a member of the same household. As a result, using the rule of construction stated above, the question terms 'residence' and 'household' are broadly interpreted in the extension cases, while in the exclusion cases the same terms are given a much more restricted interpretation. It has been stated that this has been necessary because in both situations the courts favor an interpretation in favor of coverage."

One of the best statements of this principle is to be found in Cal-Farm Insurance Company v. Boisseranc, 151 Cal.App.2d 775, 312 P.2d 401, where it was said:

"It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the in-

surance relates. If the insurer uses language which is uncertain any reasonable doubt will be resolved against him; if the doubt relates to extent or fact of coverage, whether as to peril insured against, the amount of liability or the person or persons protected, the language will be understood in its most inclusive sense, for the benefit of the insured."

As counsel for the plaintiff states, the terms "residence" and "household" have been interpreted by the courts of America in varying degrees of context, it being possible to find cases interpreting the words in opposite ways. In such cases their interpretation is sought to be explained by rules of construction, i. e., broad construction for so-called extension cases, and narrow construction for so-called exclusion cases. Here, again, the California court, in Cal-Farm Insurance Company v. Boisseranc, supra, seems to have hit the nail directly on the head when it said:

"Both attempt to apply the rules of construction above discussed. As a result, in the extension cases the questioned terms are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation. This is necessary because in both situations the courts favor an interpretation in favor of coverage."

In Kansas there are two cases cited by the plaintiff insurance company on the question of policy interpretation involving similar expressions, one bearing on a "person in the insured's household," Vaughn v. American Alliance Ins. Co., 138 Kan. 731, 27 P.2d 212; and on interpreting a "member of his household" (meaning the insured's household), General Leasing Corp. v. Anderson, 197 Kan. 327, 416 P.2d 302. In the *Vaughn* case the Supreme Court goes into the nuances of definition, quoting from Bouvier, Corpus Juris, Webster's Dictionary, and Words and Phrases, all indicating that such terms as "household," "resident of household," "member of the insured's household," all may have somewhat different meanings, depending upon the context used and the circumstances. In the *Vaughn* case, as indicated by the syllabus, it was stated:

"Plaintiff held a policy of insurance issued by defendant to protect his automobile against theft 'excepting by any person in the assured's household.' The automobile was stolen by plaintiff's son, who had been paroled to his father from a penal institution for a term which expired two months and eight days prior to the theft. Three weeks prior to the theft the son had left his father's house, taking his clothes and property with him, with the avowed intention of seeking employment elsewhere. The son never returned to his father's house, although he was privileged to do so. *Held,* that the son was not a member of the assured's household at the time he stole the automobile, and the assured was entitled to recover on the policy."

In General Leasing Corp. v. Anderson, supra, a so-called "drive other car" clause in an automobile liability policy was involved. In that case a son was 22 years old, single, and lived away from home most of the time as he attended college, worked, was substantially self-supporting, and resided in a town different than his parents. He owned a separate automobile which was separately insured and his father owned an automobile which was separately insured. The evidence showed that the son used the father's car three or four times a year on special occasions, and on the occasion in question, while using his father's car, with permission of the father, had a collision, injuring others and resulting in a lawsuit against his father and him. It was contended by the appellant insurance company that the policy it had on the son's car did not cover him in the use of his father's automobile because of an exclusionary provision in the policy barring coverage for the insured's use of another automobile owned by a member of the same household, and furnished for regular use to the insured. The

Supreme Court of Kansas, in holding that there was coverage under the policy, concluded that under the *facts of that case* the father and son were *not* members of the same household and that the father's car was not furnished to his son for regular use.

In view of what will be said later, while these cases are enlightening and appear to be correctly decided, this Court does not consider these two Kansas cases as either factually consistent with the one here, or binding upon this Court in the interpretation of the policy now before it, under the facts and circumstances of this case. It is to be noted, however, that the Kansas Supreme Court's interpretation of the phrases was in favor of coverage to the insured.

We believe that there are several cases from other jurisdictions which are squarely in point with the situation in this case. The best case in this regard is the case of Lumbermens Mutual Casualty Co. v. Continental Casualty Co., 387 P.2d 104 (Alaska, 1963), involving the identical language of the policy under interpretation in the case at bar. In this case, a wife had filed for divorce and her husband had moved to other quarters. The evidence disclosed that the husband ate and slept at a different place from where his wife and children resided, but that he did on occasion return to his former home, where he had left some tools and other personal effects. While so separated, the wife was operating a motor vehicle rented by a third party, and was involved in a collision which inflicted personal injuries on other persons. The question was raised by the husband's liability insurance carrier, the plaintiff, as to coverage to the wife and to her administrator, the wife having been killed in said collision. Decedent wife's administrator demanded that Lumbermens Mutual Casualty Company defend an action for personal injuries brought by the passengers, and Lumbermens, then as the plaintiff, filed an action for declaratory judgment, asking the court to declare its policy issued to the husband furnished no coverage to the decedent in the operation of the rented vehicle. As stated previously, the policy in the *Lumbermens* case contained an identical definition of "named insured" as the policy in this case, covering her "if a resident of the same household." In that particular case the policy of insurance in question had been issued after the parties were separated. It was held that the ruling of the trial court was correct—that the husband and wife were residents of the same household at the time she met her death while operating a non-owned automobile within the provisions of the Lumbermens policy.

Another case which this Court finds persuasive in this area is Cal-Farm Insurance Co. v. Boisseranc, supra, hereinbefore referred to. This case involved an interpretation of a policy of insurance on the question of whether it covered the six-year-old child of the insured. The insured and his wife were involved in a divorce action and she had been granted an interlocutory decree, under the terms of which the insured and his wife shared custody of their child at different physical premises. At the time of the incident involved in that case the mother had custody of the child under the terms of the court decree. The action was brought by the insurer for determination that it was not liable under a comprehensive liability policy issued by it to the named insured, the father of the child, for any damages which might be awarded in an action arising out of tortious injury inflicted by the insured's child upon another child. The question arose in that case under a provision of the policy which provided:

"The unqualified word 'insured' includes the named insured and also includes, if residents of his household, his spouse and relatives * * *."

If the son of the insured was a "resident of his household" then the insured was covered for the alleged negligent act of the infant son. In spite of contentions by the insurance company that the infant son was not a "resident of insured's household" within the terms of the policy, because of the explicit terms of the

divorce decree, and a different physical residence at the time of the tortious act, the California court held that the son was a member of his father's household and that coverage was extended under the policy. The Court, there, also significantly said:

"The terms 'residence' and 'household' of an insured as used in a comprehensive policy protecting insured and his wife and relatives if residents of his household, *had no absolute meaning, but their meaning might vary according to the circumstances.*" (Emphasis supplied.)

Other cases in point are Olson v. Standard Marine Insurance Co., 109 Cal. App.2d 130, 240 P.2d 379; Mazzilli v. Accident & Casualty Ins. Co., 35 N.J. 1, 170 A.2d 800; Central Manufacturers' Mutual Ins. Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557.

The Court has no difficulty in concluding, as a matter of law under the factual situation here posed and well-grounded court decisions, the particular provisions of the automobile liability insurance policy before the Court are ambiguous, uncertain and equivocal in phraseology, and thus incapable of uniform connotation.

■ Under the circumstances of the case at bar, this Court finds the facts persuasive that when Patricia and the children left Albert she took only a part of the mutual property of the husband and wife; that he immediately went to the jurisdiction of his parent's residence, moved in with them, stored the property of the couple then in his possession, and instituted a divorce action there as his residence at their home. The Court is further persuaded by the fact that the couple visited together, he saying the relationship was apart, and she saying it was together. Another persuasive factor, not strictly a provision of the insurance policy under interpretation, but certainly a straw in the wind, of no doubt some compelling influence in selling the policy originally, was the very comfortable title: "Custom-Rite (Family Automobile Policy)," printed in bold face type

on the front of the policy, the inference being that this was a policy to protect all members of the family as long as such family relationship legally existed. It should also be noted that the policy in the case at bar had been in effect during the marriage of the parties—not taken out *after* the separation and divorce proceedings.

The Court therefore finds that under the evidence the defendant Patricia Weeks Miller was a "named insured" in the policy and was at the time of the accident of June 17, 1962, "a resident of the same household" as her husband, the principal "named insured."

The Court further finds that the 1952 Buick automobile separately titled in the defendant Patricia as a "named insured" under terms of the policy, was operated as an "owned automobile" within the intent of policy provisions which defined an "owned automobile" under Section 2 of Conditions of the policy relating to "Premium."

The opinion of the Court as to the ambiguity of the policy and specific facts found from the evidence, which call for an interpretation in favor of coverage, is bolstered by some general public policy considerations which should not be shunted aside in examining a legal problem of this character.

■ It is well-known law in Kansas, as well as the nation as a whole, that insurance is such an essential part of the commercial activities of our people as presently conducted, that it has long ago become a business impressed with the public interest. See Re: Insurance Tax Cases, 160 Kan. 300, 161 P.2d 726; Koehn v. Central National Insurance Co., 187 Kan. 192, 354 P.2d 352; Ferguson v. Phoenix Assurance Co., 189 Kan. 459, 370 P.2d 379, 99 A.L.R.2d 118; Holmstrom v. Sullivan, 192 Kan. 746, 391 P.2d 100. Long ago the Supreme Court of the United States likewise affirmed this view of insurance and insurance companies. See German Alliance Insurance Co. v. Superintendent of Ins. of State of Kansas, 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011.

To ameliorate the harsh effects of uncompensated automobile accidents, the Kansas Legislature, in 1939, adopted, with a few changes, the Uniform Financial Responsibility Act (Art. IV, Uniform Vehicle Code). Kansas was the thirty-fifth state at that time to adopt this type of legislation, which is virtually now in effect nationwide, from state to state, and firmly established as the public policy of our land.

Such laws were enacted as part of the duty of the state to its citizens to exercise control and regulation in the public interest over public safety and welfare. The purpose of such legislation was well stated by the Supreme Court of the United States in the case of Hendrick v. State of Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385, as follows:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public. * * * In the absence of national legislation covering the subject, a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles * * *."

It would inevitably seem to follow from these enactments and the quasi-public nature of insurance companies, that the public interest is deeply vested in the financial responsibility—or ability to pay a liability judgment—of every driver of a motor vehicle on the roads of America today. As such, it is to the public interest of every user of the highway not to have to proceed at his peril because of a welter of technicalities—whether factual or in law—of the applicability of a particular driver's liability insurance policy.

One of the great shames of American society is the ever-increasing divorce rate and breakup of families which lead to increased crime, social and economic irresponsibility, and a lessening of the moral fiber of good citizenship. Couple this with the population explosion and great increase in motor vehicle traffic in a mobile-minded nation. If it were necessary as a condition precedent to driving an automobile on a public highway under the protection of the Financial Responsibility law, to examine the marital status of every driver to find out whether he was married, divorced, or separated temporarily from his fireside, bed and spouse, by duty, business, or a family quarrel, no citizen using the highway could ever reasonably expect to be protected by the other motorists' compliance with the state laws requiring the carrying of automobile liability insurance.

This Court does not believe that an insurance company, doing business as a quasi-public institution, can or should be able to avoid liability under ambiguous provisions of a policy—by attempting to require the spouse of the policy owner as an "insured" to remain under the same roof and in the same physical household during the legal existence of a marriage. Neither does this Court believe it is incumbent upon a user of the highways to conduct a "bed check" to see if another motorist is fully and safely insured by the fact that conjugal bliss is present in his home at the time.

Consequently, for the reasons stated, this Court is of the firm opinion that the provisions of this "Custom-Rite (Family Automobile Policy)" covered the automobile accident of Patricia, and judgment and costs should be entered for the defendants and against the plaintiff. This opinion incorporates findings of fact and conclusions of law in compliance with the scope and requirements of Rule 52 of the Federal Rules of Civil Procedure.

The Clerk shall enter judgment accordingly.