(253 P.3d 377)
No. 104,321

CLAYTON HALL, Natural Parent and Heir-at-Law of KINNIE RAQUEL HALL, *Appellant*, v. SHELTER MUTUAL INSURANCE COMPANY, *Appellee*.

Opinion filed April 22, 2011.

*Fred Spigarelli* and *Angela Trimble*, of Spigarelli, Spigarelli & Hayes, of Pittsburg, for appellant.

*James J. Cramer* and *Kara M. Milligan*, of Payne & Jones, Chartered, of Overland Park, for appellee.

Before GREENE, C.J., PIERRON and ARNOLD-BURGER, JJ.

PIERRON, J.: Clayton Hall, father of a minor child who was killed in a motor vehicle accident, appeals the district court's order granting summary judgment to Shelter Mutual Insurance Company (Shelter). Hall argues the court erred in ruling as a matter of law that the minor child was not an insured under the policy. Specifically, the court ruled that the language of the policy excluded coverage because the minor child was not primarily a resident of Hall's household. We affirm.

On April 5, 2006, Kinnie Raquel Hall was a passenger in a vehicle operated by her stepfather, Christopher Blake, traveling on Interstate 35. Rhonda Mains was driving a vehicle in the same direction as Blake's vehicle on Interstate 35. Mains stopped or slowed abruptly in front of Blake's vehicle. As a result, Blake lost control of his vehicle and struck a concrete barrier, causing his vehicle to roll over. Kinnie died as a result of her injuries from the accident.

Blake had an automobile liability policy with policy limits of $25,000 per person. Mains had an automobile liability policy with policy limits of $25,000 per person.

At the time of the accident, Hall was divorced from Kinnie's mother, Jolene Lanois. Hall and Lanois, as legal heirs of Kinnie, made a claim against Blake and Mains for Kinnie's wrongful death. Hall and Lanois settled all claims against Blake and Mains for the policy limits of both policies. The wrongful death recovery was split equally between Hall and Lanois, with each receiving $25,000.

Hall had an automobile insurance policy with Shelter that included underinsured motorist coverage with limits of $50,000 per person.

Hall filed a claim with Shelter under the underinsured motorist provision of his automobile insurance policy. Shelter denied Hall's claim, stating:

"We are in receipt of and thank you for the divorce documents. Kinnie Hall would not be considered a relative under Mr. Hall's automobile policy. Kinnie was not resident and actually living in Mr. Hall's household at the time of this accident. Since she was not a relative, per our policy language, there is no coverage for Underinsured Motorist."

On June 22, 2007, Hall filed suit against Shelter, alleging that Shelter breached its insurance contract with him by refusing coverage under the underinsured motorist provision of his policy.

Hall and Lanois had joint legal custody of Kinnie from the time of the divorce until the time of her death. Hall had primary residential custody in Parsons from May 1998 until December 2004. In December 2004, Lanois was granted primary residential custody. After the change of primary residential custody, Kinnie maintained her own room at Hall's home, which contained personal belongings such as a bed, clothing, toys, her artwork, stuffed animals, toiletries, a guitar, and her pet goldfish. Kinnie also received mail at Hall's home, including church information, birthday cards, and reminders for medical appointments.

Kinnie had a sister and half-brother who lived with Hall in Parsons. Kinnie spent a significant amount of time at Hall's residence. She stayed with Hall at a minimum of every other weekend, for holidays, and during the summer months. In his deposition, Hall

testified that Kinnie often spent additional weekend visits beyond those provided for in the parenting time agreement.

It is undisputed that at the time of the accident Kinnie was *primarily* residing with Lanois in Wichita.

The insuring agreement for the underinsured motorist coverage provided by Shelter states: "If an **insured** sustains **bodily injury** as a result of an **accident** involving the **use** of a **motor vehicle**, and is entitled to **damages** as a result of that **bodily injury**, **we** will pay the **uncompensated damages**, subject to the limit of **our** liability stated in this Coverage."

The term "insured" is further defined as: "(a) **You**; (b) any **relative**; and (c) any other **individual using** the **described auto** with **permission**."

In denying Hall's claim, Shelter stated that Kinnie did not meet the policy's definition of the term "relative" as defined in the policy:

"**Relative** means an **individual** related to **you** by blood, marriage, or adoption, who is *primarily* a resident of, and actually living in, **your** household. It includes **your** unmarried and emancipated child away at school. **Relative** also includes any foster children in your legal custody for more than ninety consecutive days immediately prior to the **accident**. **Relative** does not mean any **individual** who **owns** an **auto**, or whose husband or wife **owns** an **auto**." (Italics added.)

After a hearing, the district court concluded that Kinnie did not meet the policy requirements for coverage and granted summary judgment to Shelter based on "the plain meaning of the contract." The court found that at the time of the accident, Kinnie was *primarily* a resident of Lanois' household; therefore, she was not an insured as defined by the insurance policy.

Hall argues the district court erred in granting summary judgment to Shelter on the basis that Kinnie was not an insured under his automobile insurance policy with Shelter. No material facts were controverted by Hall.

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in

favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied if reasonable minds could differ as to the conclusions drawn from the evidence. *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

" 'An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. The disputed question of fact which is immaterial to the issue does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. [Citation omitted.]' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000) (quoting *Bergstrom v. Noah*, 266 Kan. 847, 872, 974 P.2d 531 [1999]).

In order to determine whether summary judgment was proper, the district court interpreted the policy language of the insurance contract. "The interpretation and legal effect of a written contract are matters of law over which an appellate court has unlimited review. [Citation omitted.] Regardless of the district court's construction of a written contract, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Shamburg*, 289 Kan. at 900-01.

The language of an insurance policy, like any other contract, must be construed in such a way as to give effect to the intention of the parties. *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575-76, 56 P.3d 789 (2002). "Because the insurer prepares its own contracts, it has a duty to make the meaning clear. If the insurer intends to restrict or limit coverage under the policy, it must use clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. [Citations omitted.]" 274 Kan. at 575. "[A]*bsent ambiguity*, courts do not construe contracts but merely enforce the contract terms in accordance with their

plain and ordinary meanings. [Citation omitted.]" *Sheldon v. KPERS*, 40 Kan. App. 2d 75, 82, 189 P.3d 554 (2008). If an insurance policy's language is clear and unambiguous, there is no need for judicial interpretation. If the language of the policy is clear, the court must enforce the contract as made. *O'Bryan*, 274 Kan. at 576.

The determinative issue is whether Kinnie qualifies as an insured under Hall's automobile insurance policy with Shelter. Hall concedes the policy contains a provision limiting underinsured motorist liability to "insured" persons. The policy provides that "insured" persons include: (1) the policyholder; (2) a "relative" of the policyholder (as defined by the policy); or (3) any other individual using the described automobile with permission. As stated in Hall's policy, a "relative" is defined as: "[A]n **individual** related to **you** by blood, marriage, or adoption, who is *primarily* a resident of, and actually living in, **your** household." (Italics added.)

Because there is no dispute that Kinnie was related to Hall, he focuses his argument on the definition of residency. Hall cites several cases in support of his argument that an insured under an automobile liability policy can legally maintain more than one household. See *State Farm Mutual Automobile Insurance Co. v. Holloway*, 423 F.2d 1281, 1283 (10th Cir. 1970) (under Oklahoma law, a person can have more than one household for insurance purposes); *Aetna Casualty and Surety Co. of Hartford, Conn. v. Means*, 382 F.2d 26, 28 (10th Cir. 1967) (under Oklahoma law, an insured under an automobile liability policy can maintain more than one household); *Hardesty v. State Farm Mutual Automobile Insurance Co.*, 361 F.2d 176, 177 (10th Cir. 1966) (under Oklahoma law, a person can have more than one household as the term "household" is used in insurance contracts).

Citing *Aetna Casualty and Surety Company v. Miller*, 276 F. Supp. 341 (D. Kan. 1967), Hall claims the definitions of "resident" and "household" should be construed broadly. In *Miller*, the court held that the wife was an "insured" under the husband's insurance policy even though the couple had separated, a petition for divorce was pending, and there was conflicting testimony regarding whether the husband and wife stayed in the same household during

weekend visits with the children. The court relied on the legal status of the marriage—as a divorce had not been finalized at the time of the accident—to determine residency. 276 F. Supp. at 348. The federal district court stated:

"If it were necessary . . . to examine the marital status of every driver to find out whether he was married, divorced, or separated temporarily from his fireside, bed and spouse, by duty, business, or a family quarrel, no citizen using the highway could ever reasonably expect to be protected by the other motorists' compliance with the state laws requiring the carrying of automobile liability insurance." 276 F. Supp. at 348.

However, in promoting a broad interpretation of the words "resident" and "household," Hall fails to recognize a significant distinction: his policy with Shelter explicitly limits coverage to relatives who *primarily* reside in the household. Further, the public policy concerns expressed by the court in *Miller* related to a comprehensive insurance policy. In this case, the claim was limited to underinsured motorist benefits; therefore, the same public policy concerns regarding coverage are not present.

Hall also cites *Friedman v. Alliance Ins. Co.*, 240 Kan. 229, 234-35, 729 P.2d 1160 (1986), for the Kansas Supreme Court's interpretation of whether an individual is a "resident of a household." The *Friedman* court provided a list of noninclusive factors to be considered in determining if a child is a resident of the parents' household: (1) the child's intent; (2) the child's bodily presence in the home; (3) whether there exists a second place of lodging, a second address, and if so, the relative permanence or transient nature thereof; (4) the child's relationship with the parents; (5) whether the child has a key to the home, his or her own room, and personal belongings there; (6) whether the child is self-supporting; (7) whether a new residence has been established; (8) where the child votes, gets mail, pays taxes, registers vehicles, banks, and has permanent ties; and (9) the length of time the child has actually resided in the home and the permanency of the living arrangements. 240 Kan. at 237.

However, such an analysis under the *Friedman* factors is not necessary in this case. The purpose of Shelter in excluding coverage to a child not *primarily* residing with a parent is readily apparent

in this case. Given the policy language, it is irrelevant that both Hall and Lanois maintained joint legal custody of Kinnie. Similarly, the evidence presented by Hall in an effort to meet the *Friedman* factors is irrelevant to the legal question presented. Hall may have established that Kinnie maintained residency in both households, but the evidence is undisputed regarding her primary residence.

There is no ambiguity as to the meaning of who is covered under the policy as an "insured." The policy specifically defines "insured" to include a relative of the policyholder if that person is *primarily* a resident of, and actually living in, the policyholder's household. Here, the evidence is undisputed that Kinnie *primarily* resided with Lanois rather than Hall. Under Kansas family law, a minor child subject to a primary residence arrangement can have only one "primary" residence even if legal custody is shared. See *In re Marriage of Roth*, 26 Kan. App. 2d 365, 367, 987 P.2d 1134 (1999).

Hall fails to cite any cases expanding coverage to family members residing elsewhere when the policy clearly limits the insured to those related individuals *primarily* residing in the household. In asserting ambiguity under the policy, Hall points solely to the fact that the policy provides coverage for a child away at college and/ or a foster child. This policy language, however, does not apply to the facts of this case. Hall contends it is contradictory for children in those situations to have more legal rights and protection than a child who is under joint legal custody and control of both parents, yet primarily living with one parent. However, it is not the court's role to rewrite the policy in the absence of ambiguity; rather, the court shall enforce the contract as made. *Simpson v. KFB Insurance Co., Inc.*, 209 Kan. 620, 624, 498 P.2d 71 (1972). The language of the insurance policy clearly restricts coverage to relatives *primarily* residing in the household.

Accordingly, it is not enough for Hall to merely prove that Kinnie was a resident of his household. The Shelter policy explicitly provides that relatives are insured under the policy only if they *primarily* reside in the named insured's household. Although ambiguities in the writing of an insurance contract are to be construed in favor of the insured, such rules have no application to language that is clear in its meaning. *O'Bryan*, 274 Kan. at 576. Here, there

is no ambiguity. During the 15 months preceding the accident, Kinnie resided *primarily* with Lanois in Wichita.

In reaching its decision, the district court correctly reasoned that one can only be *primarily* a resident of one household; otherwise, the use of the word *primarily* is meaningless. The court also stated:

"While it may be speculative, it appears to the court that the defendant may have included the word 'primarily' in this contract of insurance in response to just those situations arising in the cases cited by the plaintiff, where an insured was found to have more than one residence. It is the defendant's prerogative in defining who will be included as an additional insured, and the court does not find that limiting 'relatives' to those who primarily live with the insured violates any public policy, since it does not prevent a person [from] being an additional insured, it only limits them to being an additional insured at one residence."

Because Kinnie did not reside *primarily* with Hall, she did not meet the definition of "insured" under the policy. Thus, no underinsured motorist benefits are owed to Hall by Shelter.

Pointing to the unambiguous language of the policy, Shelter establishes there are no triable issues as to any material facts in this case. Kinnie was not *primarily* a resident of Hall's household. Shelter's decision to deny coverage on the basis that Kinnie did not qualify as an insured is confirmed by the clear language of the insurance policy. Thus, the district court correctly granted summary judgment in favor of Shelter.

Affirmed.