No. 52,303

Manuel L. Rubin, *Appellant,* v. KPERS and The State of Kansas, *Appellees.*

(629 P.2d 148)

Opinion filed June 10, 1981.

*Gary R. Terrill,* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and *John M. Ostrowski,* of the same firm, was with him on the brief for appellant.

*Janet A. Chubb,* assistant attorney general, argued the cause and *Robert T. Stephan,* attorney general, was with her on the brief for appellees.

The opinion of the court was delivered by

Holmes, J.: Manuel L. Rubin appeals from a judgment of the district court which denied resumption of long-term disability payments under the Kansas Public Employees Retirement System (KPERS), K.S.A. 74-4901 *et seq.* (Weeks). After receiving disability payments due to a mental or nervous condition for two years the payments were terminated. Rubin sued KPERS and the State of Kansas to compel resumption of the disability payments. The matter was submitted to the trial court on an agreed statement of facts which will be summarized herein.

Plaintiff is a former employee of the State of Kansas and as such qualified for KPERS benefits. In December, 1972, plaintiff became disabled due to a mental or emotional disorder and has continued to be totally disabled. KPERS, pursuant to K.S.A. 74-4927, had elected to adopt a long-term disability plan which was funded by disability insurance as contemplated by the statute. The disability insurance was issued by Security Benefit Life Insurance Company and the parties agree that plaintiff meets both the statutory definition of total disability (K.S.A. 74-4902[32]) and that contained in the Security Benefit policy GDL

1041. Under the terms of the statute plaintiff became eligible to receive total disability payments beginning May 31, 1973, and continued to receive monthly benefits for a period of two years. At the end of the two years Security Benefit terminated further payments based upon a provision in the policy which reads:

"MENTAL OR NERVOUS LIMITATION. After two years of payments for disability partly or entirely due to neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind, the benefit under the Contract will be paid during the further continuance of such total disability only when the Insured is confined in a hospital or other institution qualified to provide care and treatment incident to such total disability except that if he is so confined for at least 14 consecutive days, the benefit under the contract will also be payable during the further continuance of total disability for a maximum of 90 days after termination of such confinement."

Plaintiff filed this action to recover $275.50 per month plus fringe benefits from May 31, 1975, and to continue to receive such payments until he is no longer disabled or until March 1, 1987, when he will reach age 65. Plaintiff appeals from a judgment rendered in favor of the defendants. At the outset we pause to note:

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish." *Stith v. Williams*, 227 Kan. 32, Syl. § 2, 605 P.2d 86 (1980).

The issues before us concern an interpretation of K.S.A. 74-4927 as it existed May 31, 1975, and all citations to the statute refer to it as of that date. (K.S.A. 1974 Supp. 74-4927.)

74-4927(1) provided inter alia:

"The board may establish a plan of death and long-term disability benefits to be paid to the members of the retirement system as hereinafter provided."

All parties concede that the decision to establish a long-term disability plan is, in the first instance, discretionary with the board of KPERS, and not mandatory. Other pertinent portions of the statute read:

74-4927(1)(c). "The plan may include other provisions relating to qualifications for benefits; schedules and graduation of benefits; limitations of eligibility for benefits by reason of termination of employment; conversion privileges; limitations of eligibility for benefits by reason of leaves of absence, military service or other interruptions in service; limitations on the condition of long-term disability

benefit payment by reason of improved health; requirements for medical examinations or reports; or any other reasonable provisions as established by rule or regulation of uniform application adopted by the board."

74-4927(3)(*a*). "*The board may purchase* from one or more life insurance companies authorized and licensed to transact group life and group accident and health insurance in this state *a policy or policies of group life insurance and group long-term disability insurance to provide the death and long-term disability benefits herein authorized. Said death and long-term disability benefits shall be available only on or after January 1, 1966, and while such death and long-term disability insurance policies are in force and effect.*"

74-4927(3)(*b*). "To carry out the legislative intent to provide, within the funds made available therefor, the broadest possible coverage for members who are in active employment or involuntarily absent from such active employment the plan shall be subject to adjustment from time to time by the board within the limitations of this act. *The board may contract with such company or companies as to terms and provisions of group life and long-term disability insurance policy or policies which terms and provisions shall be consistent with the terms and provisions of group life and long-term disability policies usually issued to those employers who employ a large number of employees* and further to this end notwithstanding any other provision of law, no premium tax shall be due or payable on such policy or policies by any company or companies issuing same nor shall any brokerage fees or commissions be paid thereon."

74-4927(5). "*The death benefit provided in this section shall be known and referred to as 'insured death benefit.' The long-term disability benefit provided in this section shall be known and referred to as 'insured disability benefit.'* " (Emphasis added.)

K.S.A. 1974 Supp. 74-4927(4) provided the method for financing the insurance policies which are to provide the death and long-term disability payments.

The evidence is clear that the limitation on payment of benefits based on mental or nervous disorders as set forth in the Security Benefit policy is a provision which is "consistent with the terms and provisions of group life and long-term disability policies usually issued to those employers who employ a large number of employees . . . ." The district court found that the insurance policy met that mandate of the statute and therefore entered judgment for the defendants.

Plaintiff contends in his first point on appeal that KPERS exceeded its enabling legislation when it purchased a long-term disability policy which contained the mental or nervous limitation. It is the position of plaintiff that the requirement of K.S.A. 1974 Supp. 74-4927(3)(*b*) that the insurance policy terms be consistent with the terms of policies issued to other employers of a large number of employees is merely one requirement and that

other provisions of the statute require broader coverage. It is argued that as the statute does not provide for different treatment of totally disabled persons suffering mental disorders KPERS exceeded its authority in purchasing a policy which established such a category when there is no limitation for those who may be totally disabled for purely physical reasons. We do not agree.

It is obvious when the statute is considered in its entirety that the plan for long-term disability, if one is adopted, is to be based upon insurance policies which must be comparable to those issued to other large scale employers. The statute throughout provides that the benefits shall be payable from insurance and sets the requirements to be contained in such insurance policies. While it may be argued that the board of KPERS has the power to acquire policies which afford broader coverage, we do not find that it is required to do so. The Security Benefit policy met the requirements of the statute and KPERS did not exceed its authority in providing a plan based upon the policy issued.

Plaintiff next contends that the defendants have failed to meet the legislative mandate of K.S.A. 1974 Supp. 74-4927(3)(b) to provide the "broadest possible coverage" for members of KPERS. K.S.A. 1974 Supp. 74-4927(4) provides for the financing of the premiums on the insurance policies and requires no contributions by the employees. It is the position of plaintiff that so long as the fund established to pay the premiums on the policies is sufficient to purchase insurance without a mental or nervous disorder limitation then KPERS is obligated to purchase policies without such limitations in order to provide the broadest possible coverage. Again we do not agree with plaintiff's construction of the statute. It appears to us that 74-4927(3)(b) provides for review and adjustment of the plan from time to time to keep the policies current and comparable to any changes which may be made within the insurance industry in policies being issued to other large scale employers. Thus, if the industry was to abolish the mental or nervous disorder limitation from new policies being issued to such employers KPERS would also be in a position to alter its plan and policy to take advantage of the broader coverage being made available. The trial court found that the policy in question met the statutory mandate and we agree that it did.

The judgment is affirmed.