**PHICO INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**PROVIDERS INSURANCE COMPANY,**
Defendant–Appellee.

No. 88–1968.

United States Court of Appeals,
Tenth Circuit.

Oct. 27, 1989.
Rehearing Denied Dec. 13, 1989.

Sally H. Harris (Jeffrey L. Lauersdorf, with her on the briefs), of Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for plaintiff-appellant.

Ronald McMillin of Carson, Coil, Riley, McMillin, Levine & Veit, Jefferson City, Mo. (Douglas M. Greenwald of McAnany, Van Cleave & Phillips, Kansas City, Kan.,

and David M. Druten of McAnany, Van Cleave & Phillips, Lenexa, Kan., with him on the brief), for defendant-appellee.

Before BRORBY, BARRETT and EBEL, Circuit Judges.

BARRETT, Senior Circuit Judge.

Phico Insurance Company (Phico) plaintiff below, appeals from the district court's Memorandum and Order denying its motion for summary judgment and granting a motion for summary judgment in favor of Providers Insurance Company (Providers), defendant below. In this diversity action, the issue presented is which insurance carrier is responsible to reimburse the other for the sum of $100,000 contributed toward a settlement. Jurisdiction in this declaratory judgment action was based on diversity of citizenship, 28 U.S.C. § 1332. A recitation of material facts follows.

On April 24, 1985, Kimberly Borland, then 15 years of age, fell from a second story window at the University of Kansas Medical Center (Medical Center) and sustained serious injuries. It was alleged that Medical Center failed to adequately supervise Kimberly, who got out of restraints and fell out of the hospital window.

Providers issued a claims made insurance policy to the Medical Center for $200,000 of coverage by reason of any accident occurring during the policy period August 1, 1984, until August 1, 1985. One of the provisions stated that a claim must be made during the policy period, and that a claim is made only by submitting to Providers *written notice* of the accident.

Phico also issued a claims made insurance policy to Medical Center which provided $200,000 coverage by reason of any accident for the policy period August 1, 1985, to August 1, 1986. However, the Phico policy contained a Prior Acts Coverage Endorsement applying to any accident occurring after July 1, 1979, upon a claim made, providing that no such coverage would apply if a policy of any other insurer was in effect and would otherwise provide coverage to the insured. Written notice

was given by Medical Center to Phico of the Kimberly Borland accident.

On April 25, 1985, the day after the Kimberly Borland accident, counsel for Medical Center phoned the claims manager of Providers and advised of the accident. The claims manager opened a file on the case, set a reserve of $50,000 and contacted a claims investigator to commence an investigation of the accident. On April 26, 1985, Providers submitted a memo to Medical Center advising that investigators would be contacting Medical Center to investigate the Kimberly Borland accident reported by Medical Center. On May 9, 1985, the investigators submitted a four-page report of the accident to Providers, accompanied by summaries of statements, photographs and copies of incident reports. No representative of Providers ever notified anyone at Medical Center that a claim was not made involving the Kimberly Borland accident or that a written claim must be filed.

Suit for damages was filed by Borland against Medical Center in the District Court of Wyandotte County, Kansas. Pursuant to the Health Care Stabilization Act, K.S.A. § 40–3401, *et seq.*, the Health Care Stabilization Fund (Fund) undertook defense of the action after Providers and Phico, per agreement, each contributed $100,000 to meet the primary insurance limits of $200,000. Under the Health Care Stabilization Act, the Fund provides coverage for any claim over and above the basic coverage of $200,000 per claim. Under the agreement, if Phico is determined to have coverage and Providers does not, Phico will pay $100,000 to Providers. On the other hand, if Providers is determined to have coverage and Phico does not, Providers will pay $100,000 to Phico.

The issue presented to the district court and on appeal to this court is which of the two insurance companies, Providers or Phico, providing professional liability insurance to Medical Center, should be responsible for providing the primary coverage of $200,000 for Medical Center on the claim of Kimberly Borland.

### District Court's Order

The district court, in granting summary judgment in favor of Providers found/concluded that: (a) Phico had standing to bring its indemnity action against Providers, even though it was not a party to the contract between Providers and Medical Center, and (b) if the Medical Center were the plaintiff in an action against Providers seeking coverage the court would face a more difficult decision (because Providers was clearly orally notified of the Borland occurrence by Medical Center), but when two insurance companies dispute each other, relevant contract terms must be construed as written. *See Memorandum and Order*, R. Vol. I, Tab 49. The court concluded:

> The Providers policy's terms are explicit: a claim is made when written notification of the occurrence is received. No written notice was received, and thus the claim was not made during the Providers policy. Thus, the Phico policy covers the claim, and summary judgment for Providers is warranted.

*Id.* at 8.

### Contentions on Appeal

Appellant Phico argues that the district court erred in (a) determining, under Kansas law, that the failure of personnel from Medical Center to provide written notification of an occurrence to Providers resulted in a breach of the Providers insurance contract, and (b) granting Providers' motion for summary judgment and in denying Phico's motion for summary judgment. Appellee Providers argues that the district court erred in ruling that Phico had standing to contest whether Providers' insurance contract with Medical Center provided coverage where Phico was not a party to that contract and where no outstanding claim for coverage on the part of Medical Center existed.

No contention is advanced on appeal that substantial issues of material fact existed, precluding summary judgment under Rule 56(a), Fed.R.Civ.P. That being so, it is our duty, just as it was the duty of the district court, to apply the proper substantive law.

*Florom v. Elliott Manufacturing*, 867 F.2d 570, 574 (10th Cir.1989). In making this evaluation, pleadings and all other evidence must be examined in the light most favorable to the opposing party. *Id; Harman v. Diversified Medical Investment Corp.*, 488 F.2d 111, 113 (10th Cir.1973), appeal after remand, 524 F.2d 361 (10th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1727, 48 L.Ed.2d 195 (1976). Finally, in our *de novo* review, we have recognized different degrees of deference we must give to the interpretations and applications of state law by a resident federal judge sitting in a diversity action. *Wilson v. Al McCord, Inc.*, 858 F.2d 1469, 1473 (10th Cir.1988) (some deference); *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 850 (10th Cir.1986) (clearly erroneous standard); *Rhody v. State Farm Mutual Insurance Company*, 771 F.2d 1416, 1417 (10th Cir.1985) (great deference). We shall proceed under the "some deference" standard.

### I.

■ Appellee Providers asserted in the district court and renews the assertion here that Phico lacks standing to bring this action because Phico was not a party to the insurance contract between Providers and Medical Center. The district court looked to Kansas law to resolve the matter, observing that Kansas law requires that an action be brought by the real party in interest, citing K.S.A. 60–217(a) and *Torkelson v. Bank of Horton*, 208 Kan. 267, 491 P.2d 954 (Kan.1971). The court correctly concluded that Phico is the real party in interest inasmuch as this action will conclusively establish whether Providers or Phico is responsible for providing the primary coverage of $200,000 for Medical Center on the Borland claim.

■ It has been stated that in most situations the standing requirement is easily met simply by determining whether the judgment has an adverse effect on the appellant. Wright–Miller–Cooper, *Federal Practice and Procedure*, Vol. 15, § 3902, p. 401 (1976). Standing to sue relates to the right to relief by one (Phico) who will

suffer an injury in fact ($100,000) if it is determined to be responsible for providing Medical Center $200,000 on the Borland claim. The above recitation shows, we believe, that the parties are clearly adverse to each other and have a significant stake in the controversy.

■ For purposes of Article III of the Constitution of the United States, standing is met if a party shows that he personally has suffered some actual or threatened injury that can be traced to the challenged action and is likely to be redressed by a favorable decision. *Acorn v. City of Tulsa, Oklahoma,* 835 F.2d 735, 738 (10th Cir. 1987). This court has observed that standing problems are analyzed by the Supreme Court based upon two inquiries, i.e., (a) whether the plaintiff (Phico) alleges that the challenged action (refusal of Providers to recognize coverage for the Medical Center on the Borland claim) has or will likely cause it injury in fact (economic or otherwise), and (b) whether the interest sought to be protected by the plaintiff (Phico) is arguably within the zone of interests to be protected or regulated by law, statute or constitutional guarantee. *ANR Pipeline v. Corporation Commission of State of Oklahoma,* 860 F.2d 1571, 1579 (10th Cir. 1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1967, 104 L.Ed.2d 435.

The district court correctly analyzed the standing requirement. Having ruled that Phico is the real party in interest, the court further reasoned:

> Further, Providers' assertion that Phico cannot recover because it was not a party to the contract between Providers and the medical center lacks merit. Kansas law recognizes that indemnity may shift an economic loss between two tortfeasors in the interest of public policy and equity. *Symons v. Mueller Co.,* 526 F.2d 13, 17 (10th Cir.1975) (citing Kansas cases). Analogously, indemnity may shift a loss from a party which is not contractually or otherwise obligated to bear the loss to another party which is contractually obligated to bear the loss. Thus, Phico has standing to bring its indemnity action against Providers, even

though it was not a party to the contract between Providers and the medical center.

(R., Vol. I, Tab 49, p. 6).

Phico relies substantially on this court's opinion in *United Services Automobile Association v. Royal Globe Insurance Co.,* 511 F.2d 1094 (10th Cir.1975) for its claim of standing to bring this declaratory judgment action against Providers. In that case, one insurance company (United) filed a diversity based declaratory judgment suit against another insurance company (Royal Globe) for a judgment declaring that Royal Globe's policy, rather than United's, covered the liability of a minor defendant driver involved in an automobile accident which occurred in Texas, resulting in a Texas lawsuit. In addition to liability, the declaratory judgment action sought a determination as to which insurance company must defend and indemnify.

In *United–Royal Globe, supra,* we observed that Royal challenged United's standing to bring the declaratory judgment action on the ground that United was not a direct beneficiary of the rental contract. Royal invoked the settled rule that an action by a third party to enforce a contract cannot be brought unless the third party is a direct beneficiary of the contract, citing to *Hawkins v. Mattes,* 171 Okl. 186, 41 P.2d 880 (1935), *Traders & General Insurance Co. v. Sand Springs Home,* 195 Okl. 509, 158 P.2d 1018 (1944) and *Neal v. Neal,* 250 F.2d 885 (10th Cir.1957). We rejected this contention and held:

> [W]e do not think this rule applicable here, simply because this action is not one to enforce a contract but rather seeks a declaration of the relative rights and duties of USAA and Royal. The subject matter of the suit—the duty to defend and indemnify Friloux (the minor) in the pending Texas lawsuit—is definite and substantial. Each party has a stake in the outcome, and their interests are adverse. We conclude that USAA has standing to bring this declaratory suit.

511 F.2d at 1096.

Providers contends that *United Services Automobile Association v. Royal–Globe*

*Insurance Co., supra,* does not apply in the instant case because in that case the duty to defend and indemnify had not been resolved when the declaratory judgment suit was filed. By contrast, argues Providers, the agreement executed prior to the filing of the instant declaratory judgment suit between the two insurance companies, the Medical Center and Kansas Health Stabilization Fund ended, once and for all, all claims for coverage that the insured could possibly make. Providers contends that:

> [B]y contributing $100,000 each to the defense of the Medical Center in the Borland lawsuit, neither private insurer assumed or was assigned any subrogation interest. Now that a final and definite 'settlement' of Medical Center–Providers coverage disputes has been reached with a full release given to the defendant-insurer, there is no basis in law or fact for plaintiff to seek to reopen that coverage issue by having a judicial resolution of the very questions settled by the agreement.

(Brief of Defendant–Appellee Providers, p. 13).

We reject Providers arguments and contentions and hold that the district court did not err in finding/concluding that Phico had standing to bring this declaratory judgment action.

The Borland lawsuit against Medical Center was filed and pending in the Texas state court after the expiration date of the Providers policy and during the Phico coverage period. No written notice of occurrence or claim had been given by Medical Center to Providers during the Providers policy period. After the Borland lawsuit was filed, however, the Medical Center did request of Providers that it provide a defense and indemnity for the claim. Providers denied coverage, contending that the policy did not apply to the Borland accident because Medical Center had not made a timely claim during the policy period. At this point, we observe that there was no reason why Medical Center would initiate a suit against Providers, inasmuch as it could (and did) make demand upon Phico to provide the identical coverage under its "prior

claim" policy provisions. Phico at first did provide a defense for Medical Center but later withdrew the defense, contending that Medical Center had made the claim against Providers before the Phico policy came into effect.

The issue of liability was then firmly joined and when Phico filed this declaratory judgment action, Medical Center and the Fund were allowed to intervene. They were dismissed from the suit with prejudice *only* after Phico and Providers entered into the settlement agreement and offered the $200,000 primary limits coverage to the Fund and paid all attorneys' fees previously incurred in the defense. In our view, the obvious purpose of the agreement on the part of both Providers and Phico was to avoid any contention of bad faith dealings with Medical Center and Fund while preserving the right to litigate between them the issue of liability for the full $200,000 coverage. Thus, the settlement simply "cleared the way" for Phico's declaratory judgment action to determine the ultimate legal responsibility for payment of the $200,000 coverage liability. Each party clearly had a stake in the outcome and their interests were adverse.

We hold that Phico had standing to pursue this litigation.

II.

Phico argues that the district court erred in determining, under Kansas law, that the failure of personnel of Medical Center to submit written notification of claim or occurrence to Providers resulted in a breach of the Providers insurance contract, rendering the Phico policy coverage exclusive on the Borland accident claim. We must agree.

█ We recognize the universal rule that courts will not make contracts under the guise of judicial interpretation, but must enforce them in accordance with their clear and unambiguous language. *Patrons Mutual Insurance Association v. Harmon,* 240 Kan. 707, 732 P.2d 741 (1987); *Merritt v. Farmers Insurance Company, Inc.,* 7 Kan.App.2d 705, 647 P.2d 1355 (1982); *Wise v. Westchester Fire Insurance Com-*

*pany,* 463 F.2d 386, 389 (10th Cir.1972). The district court in the case at bar applied this rule:

> [H]owever, the policy requires written notice of the occurrence. In the instant action, although the medical center telephoned Providers regarding the occurrence, and although Providers' actions clearly indicate that it was notified, the record does not reveal any evidence of written notification to Providers by the medical center during the policy period.

(R., Vol. I, Tab 49, p. 7).

■ An exception to the rule applied by the district court can be found in the doctrine of waiver. In the course of oral argument before this court, counsel for Providers acknowledged that if the dispute in this case had been between Providers and its insured, Medical Center, relative to coverage for the Borland claim, the matter would not be before this court, thus clearly indicating that Providers was liable to Medical Center based on the facts and circumstances of this case. No such acknowledgment was made before the district court or, if so, it is not reflected in our record on appeal.

The acknowledgment by counsel for Providers, *supra,* is consistent with the law of implied waiver based upon acts and conduct. See *Green v. General Accident Insurance Company of America,* 106 N.M. 523, 746 P.2d 152 (1987) (where unverified notice and proof of loss are given to an insurer on a claim and an adjuster is sent by insurer to investigate the loss, refusal to honor claim because it was not verified is waived; failure by insurer's representatives to furnish insured with a formal "proof of loss" form until eight months after being notified of the loss was inconsistent with an intention to demand exact compliance with terms of the policy); *Hitt v. Cox,* 737 F.2d 421 (4th Cir.1984) (in Virginia diversity case, held that failure on the part of insured to give written notice did not preclude coverage based on prompt and proper oral notice); *Schippers v. State Farm Mutual Auto Insurance,* 30 Utah 2d 404, 518 P.2d 1099 (1974) (where party claiming to be insured under uninsured motorist coverage orally notified insurer of claim, insurer who advised that policy did not provide coverage could not assert failure to submit written notice of accident as defense); *Tippets v. Gem State Mutual Life Association, Inc.,* 91 Idaho 91, 416 P.2d 38 (Idaho, 1966) (where insurer proceeds with its own investigation and makes determination as to its liability and denies coverage as a result of its own investigation, it is deemed to have waived its right to demand further proof of loss); *March v. Snake River Mutual Fire Insurance Co.,* 89 Idaho 275, 404 P.2d 614 (1965) (fire policy provision requiring that insured must give immediate notice of loss and within certain period thereafter file a proof of loss are for benefit of insurer and may be waived by words and conduct inconsistent with an intention to demand strict compliance).

■ The purpose of a policy provision such as that here involved requiring that the insured give the insurer prompt written notice of an occurrence or claim is to provide the insurer an opportunity to make a timely and adequate investigation in order to form an intelligent estimate of its rights and liabilities. Appleman, *Insurance Law and Practice,* § 4731, p. 2 (1981); 13 A., G. Couch, *Insurance,* § 49:2 (2nd Ed.1982). Such a requirement tends to protect the insurer against fraudulent claims and also against invalid claims made in good faith. Appleman, *Insurance Law and Practice,* § 4731, pp. 4–5 (1981).

■ Policy provisions respecting notice of claim or occurrence should be liberally construed in favor of the insured. *Id.* at 7. Thus, many courts apply the rule that, in the absence of an express forfeiture clause, if the insured gives the insurer timely and adequate notice, even though not submitted in writing or in keeping with policy terms, it is the obligation of the insurer to show actual prejudice for denial of coverage. 13 A., G. Couch, *Insurance,* §§ 49:49, 49:50 (2nd Ed.1981); *Beeler v. Continental Casualty Co.,* 125 Kan. 441, 265 P. 57 (1928); *Security National Bank of Kansas City, Kansas v. Continental Insurance Co.,* 586 F.Supp. 139, 150

(D.Kan.1982); *Travelers Insurance Company v. Feld Car & Truck Leasing Corp.,* 517 F.Supp. 1132, 1135 (D.Kan.1981). In the instant case, while there was a "condition precedent" section in the Providers' policy, there was no forfeiture clause. Forfeitures of insurance policies are disfavored in Kansas and should be permitted only when expressed in clear and unmistakable terms. *Bingham's Estate v. Nationwide Life Insurance Company of Columbus, Ohio,* 7 Kan.App.2d 72, 638 P.2d 352, *affirmed and modified,* 231 Kan. 389, 646 P.2d 1048 (1981). In *Local No. 1179 v. Merchants Mutual Bonding Co.,* 228 Kan. 226, 613 P.2d 944 (Kan.1980), the court held that the failure of the obligee to give notice of the principal's default in strict compliance with the terms of the bond did not relieve the surety of liability where the failure to notify resulted in no actual loss or prejudice to the surety. Thus, the question of prejudice to Providers is material.

In *United Services Auto Association v. Royal–Globe Insurance Co.,* 511 F.2d 1094 (10th Cir.1975), an Oklahoma diversity case, the Royal policy contained an exclusion-of-minors clause. The district court ruled that Royal was estopped from relying on this clause in denying coverage because its agent had *actual* notice that the minor would drive the vehicle. We affirmed, and in footnote 1 we noted that Royal did not rely upon the contract provisions forbidding waiver unless in writing and that, in any event, "[s]uch reliance is foreclosed by the case law. See 3 Corbin § 763 and cases cited therein (1960; 1971 Supplement)." *Id.* at 1096. The same reasoning applies in the instant case.

In *United Services v. Royal–Globe, supra,* we further observed that restrictive covenants such as the exclusion-of-minor clause, were valid in Oklahoma absent an implied or tacit consent, citing to *Carlton v. State Farm Mutual Automobile Insurance Co.,* 309 P.2d 286, 288 (Okla.1957) in which case the doctrine of estoppel was applied. We quoted from *Security Insurance Co. of New Haven v. Greer,* 437 P.2d 243 (Okla.1968) where we stated that:

[T]he court held that an insurance company was estopped from relying upon a clause excluding non-personal property from coverage by the fact that the company's agent was advised by the insured that one of the items to be covered was non-personal. Sustaining coverage under the policy, the court said, 'An insurer may by his action or conduct be estopped from denying that his policy affords coverage for a risk which the insured has been led honestly to believe was assumed under the terms of the policy.' *Id.,* at 245–46.

511 F.2d at 1096–97.

■ We are convinced that, under Kansas law, in the absence of an express forfeiture clause, if the insured gives timely and adequate oral notice of a claim or occurrence, even though not submitted in writing in accord with policy terms, and if the insurer acts on the notice given to undertake an adequate investigation in order to determine its rights and liabilities, it is the duty of the insurer to show actual prejudice for denial of coverage. There has been no showing of actual prejudice by Providers in the case at bar.

REVERSED and REMANDED for further proceedings consistent with this opinion.