(189 P.3d 554)
No. 99,012

WILLIAM A. SHELDON, *Appellant*, v. KANSAS PUBLIC EMPLOYEES
RETIREMENT SYSTEM, *Appellee*.

Opinion filed August 1, 2008.

*James S. Oswalt*, of Hutchinson, for appellant.

*J. Phillip Gragson*, of Henson, Clark, Hutton, Mudrick & Gragson, LLP, of Topeka, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

MCANANY, J.: This appeal involves the decision of the Kansas Public Employees Retirement System (KPERS) to deny disability benefits to William A. Sheldon. The appeal is complicated by two factors. First, the case was resolved before the agency by summary judgment rather than the typical weighing of conflicting evidence, making factual findings, and arriving at legal conclusions that arise from the facts as established. Second, the agency never determined whether Sheldon was totally disabled as defined by the policy. Summary judgment was entered because Sheldon's claim was too late.

In order to provide a complete factual overview, we will summarize the facts from the record. As will be seen, we will constrain our factual consideration considerably once we undertake the anal-

ysis needed to evaluate the court's ruling on the summary judgment motion that led to this appeal.

KPERS was created by the Kansas Legislature to be "a body corporate and an instrumentality of the state of Kansas." K.S.A. 74-4903. It provides retirement and other benefits, including disability benefits, to participating members. Sheldon was a member of KPERS. He was a school teacher who taught and coached athletics in schools in Langdon and Sharon Springs before coming to the Lewis Unified School District No. 502 (U.S.D. 502) in August 1988, where he taught and coached in the elementary school, junior high, and high school.

While at U.S.D. 502, Sheldon developed back problems and underwent surgeries in 1999 and 2000. The surgeries did not resolve his back pain, so he stopped coaching though he continued to teach. Virgil Ritchie, the school principal who later became school superintendent, encouraged Sheldon to apply for disability benefits on one or two occasions, but Sheldon thought his back would improve.

Before beginning the 2001-2002 school year, U.S.D. 502 notified Sheldon and others that their teaching contracts would not be renewed at the end of the school year due to a decline in student enrollment and resulting budget constraints. Sheldon's back condition was not a factor in the decision to terminate his employment. Sheldon taught throughout the school year. His last day of teaching for the school district was May 24, 2002.

Over that summer and during the summer of 2003, Sheldon taught drivers' education courses in Larned. He also applied for various teaching positions in Kansas, Texas, New Mexico, Nebraska, Montana, and Colorado. Sheldon was unable to obtain another teaching position.

In November 2003, Sheldon called KPERS to inquire about disability benefits. Melva Janke, an administrative assistant handling disability claims, spoke with Sheldon and followed up with a letter in which she stated:

"To be eligible to receive a monthly disability benefit under the terms of the KPERS disability income benefit policy, a member must be totally disabled for over 180 continuous days. The 180 day waiting period commences the day after

the member's last day physically on the job in a KPERS covered position. A Disability Income Benefit Certification is enclosed for further description of total disability.

"Your employer states you left work due to reduction of force, therefore, it appears you would not meet the definition of total disability at the time you left."

Janke called U.S.D. 502 to inquire why no disability claim had been filed on Sheldon's behalf. She was advised that no claim was filed because the school district understood that Sheldon intended to continue working after he lost his position with U.S.D. 502.

Almost a year later, on October 6, 2004, Dr. Pedro A. Murati examined Sheldon and opined that Sheldon suffered a 20% whole person impairment based on his low back injury. On October 11, 2004, Sheldon made his first request to KPERS for disability benefits. On December 29, 2004, Security Benefit Life Insurance Company (Security Benefit), the KPERS plan administrator, denied Sheldon's claim because he was not totally disabled within the meaning of the disability policy and because he failed to provide timely written notice of the claim.

On January 1, 2005, DCG Resource Options, LLC, (DCG) replaced Security Benefit as the plan administrator. Sheldon's request for reconsideration was referred to DCG. DCG reconsidered the claim and, on March 30, 2005, again denied it based upon Sheldon not meeting the definition of total disability as of May 24, 2002, when he left the school district.

Sheldon sought an administrative appeal with KPERS. He supported his claim with medical opinions from Dr. Murati and from Dr. Kris Lewonowski, the surgeon who operated on Sheldon's back. Dr. Lewonowski opined that Sheldon was disabled on and before May 24, 2002. To explain his late filing, Sheldon claimed he had been dissuaded from pursuing his claim by KPERS employees.

After the completion of discovery, KPERS moved for summary judgment, arguing that Sheldon's claim was untimely. KPERS did not argue that Sheldon was not totally disabled on May 24, 2002. In his response Sheldon claimed that KPERS should be estopped from raising the lateness of his claim and, in any event, KPERS had not been prejudiced by the late assertion of his claim. The

hearing officer sustained KPERS' motion, finding that Sheldon's claim was not timely. The hearing officer made no finding as to whether Sheldon was disabled as of May 24, 2002. After exhausting his administrative remedies, Sheldon filed an action for judicial review in the district court. The district court affirmed the denial of disability benefits, and this appeal followed.

*Standards of Review*

The district court's review of actions of an administrative agency is governed by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq. Miller v. Board of Trustees of KPERS*, 21 Kan. App. 2d 315, 317, 898 P.2d 1188 (1995). When we review the district court's decision upholding KPERS' decision to deny benefits to Sheldon, we must first determine whether the district court followed the requirements and restrictions placed on it and then conduct the same review of the agency's action as required of the district court. See *Jones v. Kansas State University*, 279 Kan. 128, 139, 106 P.3d 10 (2005).

K.S.A. 77-621(c) lists the bases for granting Sheldon relief upon judicial review. These are the standards that apply in both the district court and in this court on appeal. They are:

"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

"(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

"(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

"(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary, or capricious." K.S.A. 77-621(c).

Here, the administrative proceeding did not involve presenting evidence before the hearing officer and the hearing officer weigh-

ing the conflicting evidence in order to arrive at a decision. Rather, the hearing officer ruled on KPERS' motion for summary judgment, a procedure specifically authorized by K.S.A. 77-519(a) of the Kansas Administrative Procedure Act. The KPERS Board of Trustees then reviewed the hearing officer's order and voted to adopt it in full.

This raises the question: By what standard do the district court and this court evaluate the hearing officer's order sustaining KPERS' summary judgment motion and the KPERS Board of Trustees' decision to adopt it in full? We do not find the parties' appellate briefs to be helpful in this regard. Further, prior Kansas cases do not provide us with any guidance. The only case we find which deals with the review of an agency's grant of summary judgment, *Abbott v. Kansas Board of Examiners in Optometry*, 268 Kan. 739, 1 P.3d 318 (2000), does not address the standard of review. However, the standards for summary judgment are well known and can be found in *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

In his appellate brief, Sheldon states that we are bound on appeal by the substantial competent evidence standard found in K.S.A. 77-621(c)(7) and that we must view the evidence in the light most favoring the prevailing party. K.S.A. 77-621(c)(7) certainly cannot apply on judicial review of a summary judgment order, since the standard for summary judgment is not whether there is substantial evidence on the record as a whole to support the judgment, but rather whether there is no genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. Further, it seems contradictory to suggest that we must view the evidence in the light most favoring the prevailing party when, in summary judgment proceedings, the court must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the nonmoving party. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005). .

In its appellate brief, KPERS recites the familiar notion that upon judicial review of an agency's action the court may not substitute its own judgment for that of the agency. See *In re Certif. of Need App. by Community Psychiatric Centers, Inc.*, 234 Kan.

802, 806, 676 P.2d 107 (1984). However, this is in direct conflict with our time-honored practice of de novo review of orders granting summary judgment. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004).

We conclude that when considering the propriety of an agency's action in granting summary judgment, a reviewing court must look to K.S.A. 77-621(c)(4) (the agency erroneously interpreted or applied the law) and K.S.A. 77-621(c)(5) (the agency failed to follow prescribed procedure) in considering de novo whether, resolving all facts and reasonable inference from the facts in favor of the nonmoving party, there exists a genuine issue of material fact and whether the party who prevailed before the agency was entitled to judgment as a matter of law.

### *The Contract*

The KPERS disability plan required Sheldon to give Security Benefit written notice of his claim within 180 days after "any event for which benefits are payable . . . or as soon thereafter as it is reasonably possible." Upon receipt of the notice of claim, Security Benefit was required to furnish Sheldon a proof of loss form which he was required to complete and submit to Security Benefit "within 90 days after the date written notice of claim is required." However, failure to timely submit a proof of loss does not

"invalidate or reduce any claim if it is shown that it was not reasonably possible to furnish such notice or proof within such time and that such notice or proof was furnished as soon as was reasonably possible, and in no event, except in the absence of legal capacity, later than one year from the time written proof of loss is otherwise required . . . ."

Interpretation of the contract is an issue of law over which appellate review is unlimited. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006). KPERS was created by our legislature. See K.S.A. 74-4901 *et seq.* When the terms of a contract are governed by statute, courts interpret the contract to effectuate the intent of the legislature. See *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005). Sheldon cites K.S.A. 2007 Supp. 74-4927(3)(A) as an expression of the legislature's intent and argues that because the statute refers to the

legislature's intent to provide the broadest possible coverage, the KPERS disability policy must be construed liberally in favor of providing coverage for him.

Read in context, the relevant portion of the statute provides:

"To carry out the legislative intent to provide, within the funds made available therefor, the broadest possible coverage for members who are in active employment or involuntarily absent from such active employment, the plan of death and long-term disability benefits shall be subject to adjustment from time to time by the board within the limitations of this section. The plan may include terms and provision which are consistent with the terms and provisions of group life and long-term disability policies usually issued to those employers who employ a large number of employees. The board shall have authority to establish and adjust from time to time the procedures for financing and administering the plan of death and long-term disability benefits authorized by this section." K.S.A. 2007 Supp. 74-4927(3)(A).

The statute is not as sweeping as Sheldon suggests. Our Supreme Court has determined that when the statute is considered in its entirety, it simply authorizes the KPERS board to make adjustments in the plan from time to time in order to keep its policies consistent with current and comparable policies available in the insurance industry to large employers. See *Rubin v. KPERS*, 229 Kan. 575, 578, 629 P.2d 148 (1981). While it is true under the general rule that ambiguous terms in an insurance policy are liberally construed in favor of the insured, K.S.A. 2007 Supp. 74-4927(3)(A) does not preempt the overarching rule of contract construction that *absent ambiguity* courts do not construe contracts but merely enforce the contract terms in accordance with their plain and ordinary meanings. See *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575-76, 56 P.3d 789 (2002).

Our examination of these provisions of the plan discloses no ambiguity or lack of clarity. Absent extenuating circumstances described in the policy, a claim must be made within 180 days of disability, and proof of loss must be submitted within 90 days thereafter. The plan defines total disability as

"disability which commences while this Plan is in force as to the Member whose disability is the basis of claim and is caused by sickness or injury which prevents the Member from performing each and every duty of any and all occupations for which he is reasonably qualified by education, training or experience and in any

case disability that requires the regular and continuous care of a physician unless care would serve no helpful purpose."

In granting summary judgment, the hearing officer did not determine whether Sheldon was totally disabled within the meaning of the policy when he left the school district. On review of the decision affirming the hearing officer's entry of summary judgment, we must consider all facts in the light most favoring Sheldon, the nonmoving party. Thus, for the purpose of our review, we must assume that Sheldon became totally disabled on May 24, 2002, the last day he worked for U.S.D. 502.

Using May 24, 2002, as the date of disability, Sheldon was required to file a written notice of claim by November 20, 2002, 180 days thereafter. It is undisputed that KPERS received Sheldon's notice of claim on October 21, 2004. Such a late notice is excused if Sheldon can demonstrate that timely notice of his claim was not reasonably possible and the notice of claim and proof of loss were filed no later than February 18, 2004 (180 days after disability, which is November 20, 2002, for notice of the claim; plus 90 days for proof of loss; plus 1 year).

Sheldon does not present facts upon which a jury could reasonably conclude that it was not reasonably possible for him to assert his claim in a timely fashion. While he claimed that he did not have the medical opinions necessary to establish his disability until he was examined by Drs. Murati and Lewonowski, he does not explain why he could not schedule the examinations sooner. Further, the sole exception to the final deadline of February 18, 2004, arises when the claimant is legally incapacitated. There is no evidence here that Sheldon lacked the legal capacity to assert his claim.

Sheldon was aware of his KPERS disability benefits. Ritchie encouraged him to seek disability benefits on at least one occasion prior to May 24, 2002. Sheldon did not contact the school district or KPERS to request assistance with his claim until November 2003. The final deadline for a late claim was February 18, 2004. Sheldon did not submit his claim until October 2004. Applying a plain reading of the unambiguous provisions of the policy to the uncontested facts, it is clear that Sheldon's claim was untimely.

### Equitable Estoppel

Sheldon contends that KPERS should be estopped from raising these time limitations as a defense. Whether KPERS is estopped from raising this defense is a question of law and not an issue of disputed material fact. Equitable estoppel may prevent enforcement of contract provisions. See *Toshiba Master Lease, Ltd. v. Ottawa University*, 23 Kan. App. 2d 129, 927 P.2d 967 (1996). For Sheldon to prevail on the grounds of equitable estoppel he must show: (1) he was induced to believe certain facts by KPERS' acts, representations, admissions, or silence when it was under a duty to speak; (2) he relied and acted upon those facts; and (3) he would be prejudiced if KPERS were allowed to deny the existence of those facts. See *Fleetwood Enterprises v. Coleman Co.*, 37 Kan. App. 2d 850, 865, 161 P.3d 765 (2007) (citing *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 [1999]).

Sheldon's estoppel claim is based upon (1) U.S.D. 502 failing to file a Form K-60 to initiate the disability claim process; (2) KPERS dissuading him from filing a claim when Janke informed Sheldon that he was ineligible; and (3) KPERS failing to inform him of the time limitations. We will consider these bases in order.

### (1) Inaction by U.S.D. 502

Sheldon contends that estoppel applies because U.S.D. 502 was notified of his desire to file a disability claim in November 2003 when Janke called the school district after speaking with Sheldon by telephone. This contention fails for several reasons.

First, Janke called the school district to determine why no K-60 had been filed for Sheldon when he left the school district. There was no request by Janke or by Sheldon that the school district take any action at that time.

Second, Sheldon cannot use the acts of the school district to estop KPERS, a separate and independent entity. Sheldon failed to show that U.S.D. 502 was an agent of KPERS for the purpose of filing a disability claim. If anything, U.S.D. 502 would have been acting as an agent for Sheldon, not for KPERS. See *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24 (1992) (defining "agency").

Third, Sheldon fails to show prejudice arising from the school district's failure to file a claim on his behalf in November 2003. Sheldon's notice of claim was due on or before November 20, 2002. Sheldon fails to demonstrate that the provisions of the policy extending the deadline applied to him.

### (2) *Dissuasion by KPERS*

When Sheldon inquired about disability benefits in November 2003, Janke informed him that he was ineligible because his employment had been terminated due to a reduction in the work force and not due to his back injury. Based on this statement, Sheldon claims he was dissuaded from pursuing his claim further. The essence of estoppel is this: A party who takes a position which the other party relies and acts upon should not be permitted to take a contrary position in litigation to the detriment of the other party who acted in good faith reliance on the earlier position. See *Fleetwood Enterprises*, 37 Kan. App. 2d at 865; *Coffey v. Stephens*, 3 Kan. App. 2d 596, 599, 599 P.2d 310 (1979). Here, KPERS has not taken contrary positions before and then during litigation. KPERS has consistently claimed that Sheldon was not totally disabled at the time he ended his employment with U.S.D. 502. It is only for purposes of summary judgment that we assume that Sheldon was totally disabled as of May 24, 2002.

Then there is the issue of detrimental reliance. Janke's letter to Sheldon stated: "If you wish to pursue this matter, put your concerns in writing to the KPERS office. If you have questions, contact me." Enclosed with the letter was the Disability Income Benefit Certification. In a later affidavit, which did not conflict with her deposition testimony but clarified her November 2003 letter (see *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 45-46, 661 P.2d 348 [1983]), Janke explained that this certificate was the disability policy itself. Sheldon did not recall receiving this plan document, but he testified that he would not dispute Janke if she testified she sent it. In her affidavit Janke swore she sent Sheldon the plan document. Thus, this fact was uncontroverted for purposes of summary judgment. Accordingly, in November 2003 Sheldon had as much information regarding his entitlement to benefits as he had later

in October 2004 when he eventually submitted his claim. Sheldon's inaction was not due to some misinformation communicated to him by KPERS. Janke's November 2003 letter to Sheldon is not a valid basis for invoking the doctrine of equitable estoppel.

### (3) Failure To Disclose Time Limits

Sheldon's final basis for equitable estoppel is KPERS' failure to inform him of the time limits for filing a claim. Sheldon was provided the time limits for submitting a claim when Janke sent him a copy of the plan with her November 19, 2003, letter. This was in response to Sheldon's first expression of interest in making a claim. These facts negate any possible estoppel argument.

### Prejudice

Sheldon contends that KPERS has the duty to show prejudice in order to invoke the defense that his claim was too late. The hearing officer concluded that "Mr. Sheldon's assertion that KPERS must show prejudice to his late filing is an unreasonable attempt to effectively extend the deadline for filing claims indefinitely." This apparently was based upon him accepting KPERS' position that prejudice must only be shown when a late claim is asserted in an occurrence policy, not in a claims-made policy; and the KPERS disability policy is a claims-made policy. The district court agreed, citing *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 101-02, 73 P.3d 120 (2003), for the distinction between occurrence and claims-made policies.

The court in *Marshall* made this distinction in discussing the common types of liability insurance available to health care providers. The district court also cited *Phico Ins. Co. v. Providers Ins. Co.*, 888 F.2d 663 (10th Cir. 1989), which dealt with a coverage dispute between two liability insurers of a hospital. The claims-made/occurrence distinction makes sense in resolving liability coverage disputes such as a typical dispute between competing liability carriers when company 1's policy was in force when the tort occurred and company 2's policy was later in force when the claim was made. The analysis becomes tortured when the distinction is applied to first-party coverage under a disability policy.

In its brief in support of its motion for summary judgment, KP-ERS relies on a number of cases to support its claim that it need not show prejudice from Sheldon's late notice of claim. Here they are: *LaForge v. American Cas. Co. of Reading, Pa.*, 37 F.3d 580 (10th Cir. 1994), dealt with whether an insurance carrier had to provide liability coverage for a director of a failed savings and loan association under an officers and directors liability policy; *Phico,* cited by the district court, involved a coverage dispute between two liability insurers of a hospital; *Simundson v. United Coastal Ins. Co.*, 951 F. Supp. 165 (D.N.D. 1997), involved a dispute over coverage in a claims-made liability policy for a wrongful death claim asserted approximately 2 years after the policy ended; *Hunt v. Kling Motor Co.*, 841 F. Supp. 1098 (D. Kan. 1993), dealt with the issue of prejudice from an insured's late notice to its liability insurer regarding a pending suit; *Campbell & Co. v. Utica Mut. Ins. Co.*, 820 S.W.2d 284 (Ark. App. 1991), considered whether there was coverage under a claims-made errors and omissions liability policy when no claim was made and no written notice was given during the policy period; *T.H.E. Ins. v. P.T.P., Inc.*, 331 Md. 406, 628 A.2d 223 (1993), involved the denial of coverage under a claims-made liability insurance policy for a claim made and reported after the policy had expired.

The common thread of these cases is that they all deal with liability insurance policies. Not one deals with first-party coverage under any type of policy, let alone a disability policy.

Coverage under a claims-made policy requires that a claim is made during the policy period. Coverage under an occurrence policy requires that the event giving rise to the claim occurred during the policy period. The hearing officer and the district court found that the KPERS policy was a claims-made policy. This distinction is meaningless in the context of the KPERS policy which does not come into and out of existence from time to time but provides ongoing coverage to a group whose members are constantly changing as they join and leave employment in the public sector.

Sheldon was a public school teacher. As such, he was a member of KPERS and entitled to disability coverage while employed by the school district. If he became disabled while employed by the

school district and a member of KPERS, he was entitled to benefits. If he ceased his employment and his membership in KPERS at a time when he was not disabled as defined by the policy, he was not entitled to disability benefits. If he later became disabled, he still was not entitled to benefits since, at the time he became disabled, he was not covered by the KPERS plan.

What triggers coverage under the KPERS plan is "disability which commences while this Plan is in force as to the Member whose disability is the basis of claim." The reference to "while this Plan is in force as to the Member" refers to the fact that while KPERS coverage is ongoing for its members, members come and go; and coverage for Sheldon is dependent upon him being a KPERS member, employed by the school district, when his disability occurred. Thus, if Sheldon was totally disabled as defined by the policy at the time he left the school district, he was covered under the KPERS policy if he properly perfected his claim.

KPERS claims that Sheldon's claim was not timely. Sheldon claims this does not matter if KPERS has not been prejudiced by his late claim. Given the fact that the triggering event is the occurrence of disability, not the assertion of a claim, KPERS seems to concede that it must show that it was prejudiced by the late notice to avoid coverage when it stated in its appellate brief: "Since the KPERS plan is a claims made policy, the notice-prejudice rule does not apply. In Kansas, the rule's application is generally limited to occurrence policies."

No Kansas case has specifically addressed whether prejudice due to a late claim must be shown in the context of a claim against KPERS for disability benefits. However, the issue has been addressed in other insurance and insurance-type settings.

A showing of prejudice from a late claim was required to avoid liability under a construction performance bond in *School District v. McCurley*, 92 Kan. 53, 142 Pac. 1077 (1914). Prejudice arising from late notice of a workers compensation claim was required by statute to avoid an insurer's liability in *Pike v. Gas Service Co.*, 223 Kan. 408, 409, 573 P.2d 1055 (1978). However, a statutory change in 1993 resulted in insurers no longer being required to show prejudice to avoid liability for such claims. See *Injured Workers of*

*Kansas v. Franklin,* 262 Kan. 840, 846, 942 P.2d 591 [1997].) In *Local No. 1179 v. Merchants Mutual Bonding Co.,* 228 Kan. 226, 230, 613 P.2d 944 (1980), late notice did not relieve a surety of liability when no prejudice resulted. In the context of a fidelity bond issued to a savings and loan association, the failure of the insured to provide a timely proof of loss does not void coverage absent a showing of prejudice. See *National Union Fire Ins. Co. v. FDIC,* 264 Kan. 733, 751, 957 P.2d 357 (1998). An insurer who issued a comprehensive general liability policy must show prejudice to avoid liability due to late notice of a claim. *AT&SF Ry. Co. v. Stonewall Ins. Co.,* 275 Kan. 698, Syl. ¶ 8, 71 P.3d 1097 (2003).

As pointed out in *Phico,* 888 F.2d at 668-69:

> "Policy provisions respecting notice of claim or occurrence should be liberally construed in favor of the insured. [Citation omitted.] Thus, many courts apply the rule that, in the absence of an express forfeiture clause, if the insured gives the insurer timely and adequate notice, even though not submitted in writing or in keeping with policy terms, it is the obligation of the insurer to show actual prejudice for denial of coverage. [Citations omitted.] . . . Forfeitures of insurance policies are disfavored in Kansas and should be permitted only when expressed in clear and unmistakable terms. [Citations omitted.]"

We find few cases from other jurisdictions considering the notice-prejudice rule in the context of a disability claim. Applying Florida law in a case in which the insurer denied coverage for a disability claim under the federal Employee Retirement Income Security Act (ERISA), the court in *Borschel v. Continental Cas. Co.,* 536 F. Supp. 2d 1294 (S.D. Fla. 2008), found a rebuttable presumption of prejudice for an untimely claim which the insured may overcome with contrary evidence. However, this is contrary to the accepted notion in Kansas that prejudice is never presumed but must be proved. See *National Union Fire Ins. Co.,* 264 Kan. at 751.

Applying California law in a similar ERISA case, the court in *Mizzell v. Paul Revere Ins. Co.,* 278 F. Supp. 2d 1146 (C.D. Cal. 2003), required the insurer to demonstrate actual prejudice from an untimely claim to justify denying coverage. Missouri law, applied to a claim for disability benefits under ERISA, requires the insurer

to establish prejudice from a late claim. See *Reid v. Connecticut General Life Ins. Co.*, 17 F.3d 1092 (8th Cir. 1994).

Washington requires a showing of prejudice, as explained in *Kaplan v. NW Mut. Life Ins. Co.*, 100 Wash. App. 571, 990 P.2d 991 (2000). The court stated:

"The policy underlying the prejudice requirement is based on risk spreading. Insurance policies should provide the maximum protection possible, while still being fair to the insurer. If insurers were allowed to avoid payment based on the insured's conduct even in the absence of prejudice, the public policy of risk spreading would be compromised and, in a sense, the insurer would receive a windfall." 100 Wash. App. at 578.

It appears that the weight of authority and the more reasoned view is to require an insurer to establish prejudice from a late claim for disability benefits in order to avoid coverage. We conclude that the requirement for KPERS to show prejudice applies here.

This leads to the final question: Has KPERS established that it is entitled to judgment as a matter of law due to it being prejudiced by Sheldon's late disability claim? As noted earlier, prejudice is not presumed but must be proven. Further, "the presence or absence of 'prejudice' in this context is a finding of fact. [Citation omitted.]" *Reid*, 17 F.3d at 1098.

The purposes of a timely notice of claim are twofold. One is to afford the insurer an opportunity to encourage medical treatment as soon as possible to mitigate the effects of the injury and to prevent avoidable complications. The other is to afford the insurer an opportunity to investigate the claimed injury and the surrounding circumstances to determine its course of action regarding the claim for benefits. In its statement of uncontroverted facts in support of its motion for summary judgment, KPERS did not list a single fact from which the hearing officer, considering the facts in the light most favoring the nonmoving party, could conclude that KPERS was prejudiced by Sheldon's late notice. In its argument in support of its motion, KPERS made no claim that it was prejudiced by Sheldon's late notice.

The issue of prejudice was first raised in Sheldon's brief in opposition to the motion. Sheldon provided a statement of additional uncontroverted facts, including the fact that he had been examined

by two doctors who expressed opinions regarding his disability. Through his supporting affidavit, Sheldon attached reports from these doctors, one of whom was an examining doctor and the other was his treating surgeon. Sheldon argued that KPERS had not been prejudiced by his late notice because, among other things, his medical records (which would include the records from his treating surgeon) were available.

In its reply brief, KPERS did not contest that Sheldon's medical records were available. It simply argued: "If [Sheldon] had submitted notice of claim and/or proof of loss during the 180-day elimination period, KPERS would have sent [him] to a doctor to be evaluated, but KPERS did not get that opportunity. The lost opportunity to investigate prejudiced KPERS."

In ruling on the motion the hearing officer listed his findings of fact. None of those facts makes reference to any prejudice suffered by KPERS. In his discussion of the facts, the hearing officer concluded that "KPERS did suffer prejudice because it can't now go back to 2002 and have Mr. Sheldon's claimed disability be timely evaluated by a doctor."

An independent medical examination of the claimant is an important tool in the defense against a disability claim. Nevertheless, it is a tool that is not employed in every case. It is uncontroverted that Sheldon's medical records are available. Those records alone may not be sufficient for KPERS to determine whether Sheldon met the policy definition of disability at the time he left U.S.D. 502 on May 24, 2002. Further, if Sheldon was disabled when he left U.S.D. 502, the extent of Sheldon's disability (and KPERS' liability for disability benefits) may have been ameliorated by treatment KPERS could have authorized had Sheldon given notice of his claim in timely fashion. Had the issue of Sheldon's late notice and any resulting prejudice been submitted to the hearing officer for a decision on the merits, the hearing officer could have made a factual determination whether Sheldon's medical records alone were sufficient to avoid a claim of prejudice. However, KPERS sought to avoid the fact-finding process in favor of a summary disposition of the claim. Consequently, in considering KPERS' summary judgment motion, the hearing officer was obliged to resolve all facts

and inferences reasonably drawn from the evidence in favor of Sheldon, the nonmoving party. Therefore, absent an uncontroverted fact that these medical records would be inadequate for KPERS to defend against the claim, the hearing officer was obliged to conclude for purposes of summary judgment that KPERS was not prejudiced because Sheldon's medical records were available. The hearing officer drew the opposite conclusion.

On review, the district court upheld the agency's action because there was substantial evidence of prejudice. As discussed earlier, this is not the appropriate standard when reviewing an agency's grant of summary judgment. Rather than viewing the evidence in the light most favoring Sheldon, the district court affirmed based upon the evidence of prejudice viewed in the light most favoring KPERS.

KPERS failed to establish that it was entitled to summary judgment based upon its having been prejudiced by Sheldon's late claim. Accordingly, we must reverse the district court, set aside the order for summary judgment in favor of KPERS, and remand the case for further proceedings before the agency's hearing officer for further summary judgment proceedings consistent with this opinion or for resolution of the factual disputes regarding Sheldon's claim.

Reversed and remanded with directions.